(No. 79042.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROMANCE DENNIS, Appellee.

*Opinion filed February 20, 1998.*

NICKELS, J., dissenting.

James E. Ryan, Attorney General, of Springfield, and Jack O'Malley and Richard A. Devine, State's Attorneys, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, William D. Carroll, Brian Nudelman, Susan R. Schierl, Christine L. Kornak and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Patricia Unsinn, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Romance Dennis, was convicted of armed robbery (720 ILCS 5/18—2(a) (West 1994)) on a theory of accountability (720 ILCS 5/5—2 (West 1994)) and sentenced to eight years' imprisonment. The appellate court reversed defendant's conviction and remanded the cause for a new trial. 271 Ill. App. 3d 1041. We granted the State's petition for leave to appeal (166 Ill. 2d R. 315(a)) and now affirm the appellate court.

## FACTUAL BACKGROUND

The testimony of Mario and Greg Perez, the victims in this case, was essentially the same. Mario testified that on July 15, 1991, he and his brother, Greg, self-employed roofing contractors, were in search of a hardware store to purchase paint and supplies. While searching, Mario drove his truck into an alleyway in the vicinity of Chicago Avenue and Springfield Road in Chicago. A garbage truck was stopped in the alley in front of him and blocked Mario's exit.

Because the alleyway was blocked, Mario turned off his truck engine, opened his door and waited for the garbage truck to move. In his rearview mirror, Mario noticed a car, being driven by defendant, enter the alley and pull up directly behind Mario's truck. Another person, later identified as Ernest Jones, exited defendant's car from the passenger side. Defendant then backed the car into a "T" in the alley.

Greg, who was seated on the passenger side of the truck, testified that he did not see the car pull behind their truck. However, as Greg sat with Mario, a man with a gun approached Greg and demanded money. Greg alerted Mario about the gunman. Upon seeing the gun, Mario grabbed from Greg's hand the four dollars which had been intended for the purchase of the paint and

supplies. Mario jumped out of the driver's side of the truck and pulled out a pocket knife to distract the gunman. Nevertheless, the gunman was able to take a radio/compact disc player from the truck's floor. Greg chased the gunman with a barbecue fork. Mario further testified that the gunman got back into the car, which, by that time, had been turned around without Mario's noticing.

Officer Patricia Warner, a Chicago police officer, testified that on July 15, 1991, as she and her partner, Paul Sarpaulis, were driving westbound on Chicago Avenue, they observed two subjects, later identified as Greg and Mario Perez, and responded to their summons for assistance. The Perez brothers told the officers that they had just been robbed and gave the officers a physical description of the robbers and of their vehicle. The description ultimately led the officers to defendant, who was later positively identified by the Perez brothers.

Officer Warner further testified that she was familiar with a three-story gray brick building at West Chicago Avenue. It was her testimony that the area is a known "dope spot," and that she had, in the past, investigated the building for narcotics trafficking. Officer Warner also testified that although she could not recall the name or exact location, there is a hardware store on Chicago Avenue.

Defendant's version of the facts is as follows. On the date of the robbery, defendant and his fiancee drove to Ernest Jones' home. After Jones was picked up, the three drove to a location on Chicago Avenue in Chicago with the intent to purchase heroin.

Defendant entered an alley between Springfield and Harding. Parked just ahead of him in the alley was a garbage truck. A pickup truck entered the alley behind him. Defendant drove up to a "T" in the alley, stopped, and allowed Jones to exit the car. After Jones exited, de-

fendant made a right turn into the "T" alley because the pickup truck was behind him. According to defendant, the pickup was one which he had seen near the drug house, which was accessible from this alley, on at least three prior occasions.

Defendant testified that Mario Perez and "some black guy" were sitting in Mario's truck. Before turning into the "T" alley, defendant saw Mario exit the pickup truck. Mario had money in his hand and was headed toward the entrance of the drug house. At that time, defendant further recounted, Jones and Mario were walking almost side by side toward the house. Defendant stated that he pulled into the "T" alley to wait for Jones' return because he did not want to wait in close proximity to the drug house, which is located on the other side of the "T."

While defendant and his fiancee were waiting, defendant saw Jones being chased toward the car by an unknown male. When Jones arrived at the car, defendant leaned to his fiancee and told her to open the door. Jones jumped into the car, and, panicking, told defendant to go. At the time, defendant, unaware of what had actually occurred, thought that perhaps there had been a "drug bust." Defendant sped off in the car.

When Jones reentered defendant's car, Jones was carrying a small radio in his hand. Prior to this time, defendant had not seen the radio and did not know from where Jones had gotten the radio. Jones subsequently told defendant that he had taken the radio from the "guys" chasing him. He lifted his shirt and showed defendant a revolver in his waistband. Prior to that time, defendant had not seen the revolver.

After dropping Jones off, defendant went home, talked to his mother and went to work. Afraid to tell the police that he was at the drug house, defendant did not notify the police about the occurrence in the alley. In

the interim, Officer Warner visited defendant's home. At some later time, defendant telephoned Officer Warner, who eventually met with defendant and placed him under arrest.

After placing defendant under arrest, the police transported defendant to the police station. Defendant agreed to cooperate with the police and, to that end, defendant was permitted to leave the station and to lead the police to Jones' home. Defendant picked up Jones and the two then traveled to defendant's home. After arriving at defendant's house, both defendant and Jones were placed under arrest.

Defendant testified that he did not know that Jones had a gun or that Jones was going to commit the robbery. On cross-examination, he stated that he had given Jones money to purchase drugs for both him and Jones.

At the close of the evidence, the jury was instructed on, *inter alia*, the elements of armed robbery and accountability. During deliberations, the jury sent a note to the court asking, "When is the commission of the offense complete?" Before the court made any response, the jury sent a second note, asking, "Can we please have the answer: When is the commission of the crime over? Will you supply the answer." As stated in the appellate court opinion, the court responded, "you may consider the period of time and the activities involved in escaping to a place of safety."

The jury subsequently returned a guilty verdict. On appeal, the appellate court held that while the trial court's decision to respond to the jury inquiry was proper, the substance of the court's response constituted reversible error. The appellate court, therefore, reversed defendant's conviction and sentence and remanded the cause for a new trial.

We granted the State's petition for leave to appeal.

The issue, as framed by the State, is whether the trial court committed reversible error when, in response to the jury's inquiry as to when the armed robbery was complete, the court responded that the jury could consider "the period of time and activities involved in escaping to a place of safety." Defendant cross appeals. We now affirm the appellate court.

## DISCUSSION

The appellate court held that the robbery ended when the Perez brothers gave up their property. Quoting from this court's opinion in *People v. Gaines*, 88 Ill. 2d 342, 367 (1981), the appellate court reasoned that " '[t]he offense of robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will.' " 271 Ill. App. 3d at 1047. Flight from the scene, the court opined, does not elongate the offense of robbery; when Jones got into defendant's car, the offense was over. When matched with the jury's questions, the trial court's response told the jury that the escape was part of the armed robbery. The trial court's response to the jury's inquiry was "misleading and tantamount to a directed verdict of guilty." Since the defendant testified that he learned of the armed robbery as he drove from the scene, the guilty verdict was made inevitable, even if the jury believed that defendant had no knowledge of the armed robbery before and during its commission.

The court additionally held that impeachment of defendant's trial testimony concerning his reasons for being in the alley was proper where that testimony differed from the statements which defendant had earlier given to police. The court also held, without determining the effect, that the State's argument concerning its own credibility was improper. 271 Ill. App. 3d 1041.

Preliminarily, we acknowledge the State's admonition to this court against issuing an advisory opinion. In

that regard, the State first notes that this court has "demonstrated an apparent interest in addressing the legal issue of whether one's participation in an 'escape' from a completed crime can make that person accountable for the crime itself." Citing our recent decision in *People v. Batchelor*, 171 Ill. 2d 367 (1996), the State then asserts that, as in *Batchelor*, we need not reach that issue. It is the State's contention that the appellate court misperceived the trial court's instruction as referencing Jones' escape once he reentered defendant's car. However, the escape referenced in the instruction was one not from a completed armed robbery, but rather from a robbery in progress. That is, the "escape" in this case is defendant's involvement in Jones' flight from his pursuing victims. The evidence, therefore, supports the conclusion that defendant was involved in the robbery both before and during its commission. Thus, as the necessary factual basis is lacking, any opinion offered by the court on whether one may be held accountable for participation in an escape from a completed robbery would be advisory.

First, in light of the trial court's reliance on *People v. Hickman*, 59 Ill. 2d 89 (1974), we agree with the State that the court's instruction referred to Jones' flight from his pursuing victims to defendant's waiting car. Second, although the State counsels us against determining whether escape forms a part of the offense of robbery, by its argument, the State appears to have done just that. In an effort to bring defendant's conduct within the scope of the accountability statute, the State first offers that for as long as Jones was fleeing his pursuing victims the "robbery was in progress." Defendant's conduct during Jones' flight, therefore, occurred during the commission of the robbery. Because the State equates Jones' flight with an "escape from a robbery in progress," the State has, as a result, determined not only that "escape" forms

a part of the offense of robbery, but also when the robbery is complete. Whether Jones' conduct during such "escape" was a part of a "robbery in progress" or part of a completed offense is the issue to be decided on appeal.

Third, by its argument, the State appears to suggest that we may dispose of the escape issue here in a manner similar to our disposition in *Batchelor*. While this case may be factually similar to *Batchelor*, it is procedurally different. The issue of whether escape formed a part of the offense of armed robbery in *Batchelor* arose in the context of a sufficiency of the evidence claim. Applying a reasonable doubt standard, we held that there was sufficient evidence to convict, without regard to whether escape formed a part of the substantive offense.

In this case, unlike in *Batchelor*, the issue of whether escape forms a part of the offense of armed robbery arises in the context of a claimed instructional error. Instructional errors are reviewed under a harmless error, not a reasonable doubt, analysis. When confronted with a sufficiency of the evidence claim, the reviewing court determines whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Batchelor*, 171 Ill. 2d at 376. Contrarily, the test for harmless error in the context of an instructional error is whether the result at trial would have been different had the jury been properly instructed. *People v. Johnson*, 146 Ill. 2d 109, 137 (1991). Where the evidence of guilt is clear and convincing, an instructional error may be deemed harmless. *People v. Moore*, 95 Ill. 2d 404, 410 (1983).

Therefore, notwithstanding the sufficiency of evidence in this case, which might support a finding of guilt, application of the harmless error analysis requires, in the first instance, a determination of whether any error occurred—in other words, whether the instruction

was correct. Second, if there was error in the instruction, we must then determine whether, in spite of that error, evidence of defendant's guilt was so clear and convincing as to render the error harmless beyond a reasonable doubt. Because, in this case, the escape issue underlies the claimed instructional error, whether escape forms a part of the offense of armed robbery for purposes of accountability is now squarely before us, and we, therefore, address it.

Accountability

We begin our analysis with consideration of the nature of accountability. A person is legally accountable for another's criminal conduct when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1992). Therefore, in order to hold defendant accountable for this armed robbery, defendant must have, with the requisite intent, aided or abetted Jones prior to or during the commission of the offense.

There seems to be no question between the parties as to the meaning of terms "aided" and "abetted" as they appear in the accountability statute. The serious debate centers, instead, on the phrase "during the commission of an offense." The State maintains that the Criminal Code of 1961 leaves unanswered what is meant by commission of the offense. However, the State posits, because accountability principles apply to deter people from joining in on and facilitating the accomplishment of criminal behavior, the doctrine of accountability "attempts to find the outermost limits of an offense, in order to deter the greatest amount of detrimental behavior."

The State rejects, as contrary to accountability purposes, utilization of an "elements of the offense" ap-

proach to defining "during the commission of an offense." The State offers that the better approach is to view the offense as a "related series of continuous events," in other words, to consider the *res gestae* of the offense. The State contends that a *res gestae* approach is consistent with accountability proposes because, under such approach, a defendant would be held accountable for his or her assistance at any point in time during the *res gestae* of the offense.

*Res gestae* has been generally understood as an evidentiary principle which was, at one time, employed as one of the exceptions to the hearsay rule. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.2 (6th ed. 1994). The term *"res gestae"* means "the subject matter of the thing done." *People v. Jarvis*, 306 Ill. 611, 615 (1923). Defined generally, *res gestae* refers to the circumstances, facts, and declarations which grow out of the main fact and serve to illustrate its character, and which are so spontaneous and contemporaneous with the main fact as to exclude the idea of deliberation or fabrications. 23 C.J.S. *Criminal Law* § 867 (1989). As long as the main transaction continues, deeds emanating from it become a part of that transaction. *Jarvis*, 306 Ill. at 615.

As a basis for the admissibility of hearsay evidence, Illinois has abandoned the concept of *res gestae* as amorphous, having been applied indiscriminately and inhibiting any reasonable analysis. See *People v. Poland*, 22 Ill. 2d 175, 180 (1961); see also *Rockford Clutch Division, Borg-Warner Corp. v. Industrial Comm'n*, 37 Ill. 2d 62 (1967). *"Res gestae"* has continued, however, as a viable concept, utilized by our courts as descriptive of the continuous nature of a criminal offense. See, *e.g.*, *People v. Trammell*, 71 Ill. App. 3d 60 (1979); *People v. Bradford*, 71 Ill. App. 3d 731 (1979); *People v. Chambliss*, 69 Ill. App. 2d 459 (1966). Nevertheless, utilization of the

concept to define the duration of a criminal offense for purposes of accountability gives us pause. We believe that the same infirmities which once plagued the *res gestae* concept as an evidentiary rule would attach were we now to utilize the concept to define the duration of a criminal offense for accountability purposes.

Notwithstanding our apprehension concerning a *res gestae* approach, there is a stronger, and more basic, reason to reject it. Section 5—1 of the Criminal Code of 1961 sets out the general rule for accountability for conduct of another. Pursuant to section 5—1, "[a] person is responsible for conduct *which is an element of an offense* if the conduct is either that of the person himself, or that of another and he is legally accountable for such conduct." (Emphasis added.) 720 ILCS 5/5—1 (West 1992). A plain reading of the statute supports the conclusion that any conduct which is not set out as an element of the offense cannot form the basis for accountability based guilt.

Even *People v. Cooper*, 53 Cal. 3d 1158, 811 P.2d 742, 282 Cal. Rptr. 450 (1991), a case which the State offers as supportive of its "series of continuous events" approach, supports an elements approach in defining the duration of an offense for accountability purposes. The facts in *Cooper* may be briefly stated. The defendant and his codefendants were parked in a shopping center parking lot. The defendant walked over to a nearby wall and then returned to the car. Several minutes later, the codefendants ran across the parking lot and, without stopping, slammed into a shopper and stole his wallet. The codefendants fled to the car, which was moving with its two right-side doors open. After the codefendants jumped inside, defendant hurriedly drove from the lot.

The defendant was charged and convicted on a theory of aiding and abetting an armed robbery. At trial,

the court instructed the jury, *inter alia*, that "[a] robbery is complete when the perpetrator has eluded his pursuers, if any; has reached a place of temporary safety and is in unchallenged possession of the stolen property after having effected an escape with such property." Defendant claimed that with respect to the robbery, the evidence proved no more than that he was an accessory after the fact. On appeal, the defendant claimed error in the court's instruction. The court of appeals agreed and, on that basis, reversed the defendant's conviction.

The case was taken up by the California Supreme Court, which was asked to determine the duration of the commission of robbery for purposes of aiding and abetting liability. The court first noted that once all elements of a robbery are satisfied the offense has been initially committed and the principal may be found guilty of robbery. This threshold of guilt-establishment is a fixed point in time, but is not synonymous with "commission" of a crime. For purposes of aider and abettor liability, the court held, commission of a robbery continues until all acts constituting the offense have ceased. *Cooper*, 53 Cal. 3d at 1164, 811 P.2d at 747, 282 Cal. Rptr. at 455.

It is this portion of the court's reasoning in *Cooper* upon which the State relies in arguing against an elements approach to defining the duration of an offense. Had the court's reasoning ended there, we could find it supportive of the State's position. However, although the court's opinion in *Cooper* may properly be viewed as an endorsement of a "series of continuous events" approach, that approach is nonetheless applied within the narrow context of the elements of the offense. Thus, to determine the duration of the commission of robbery, the *Cooper* court did not focus simply on the series of events which occurred during the perpetration of the offense, but also considered those events within the

context of the "duration of the *final element* of the robbery" as provided by statute. (Emphasis in original.) *Cooper*, 53 Cal. 3d at 1165, 811 P.2d at 747-48, 282 Cal. Rptr. at 455-56.

As we understand *Cooper*, under California law, asportation is the final element required to constitute the offense of robbery. For purposes of establishing guilt, the asportation element is initially satisfied by evidence of slight movement; it is not confined to a fixed point in time. The majority construed the asportation element as continuing for as long as the property is being carried away to a place of temporary safety. Therefore, under California law, in order to be convicted for aiding and abetting a robbery, a defendant must form the necessary intent to facilitate or encourage commission of the robbery prior to or during the carrying away of the property to a temporary place of safety. *Cooper*, 53 Cal. 3d at 1165, 811 P.2d at 748, 282 Cal. Rptr. at 456. The court in *Cooper* made clear its position that for purposes of aider and abetter liability, delineation of a crime logically required consideration of the particular elements which constitute the crime. Finding no evidence to the contrary, the court held that because the escape and asportation coincided, the erroneous instruction was harmless beyond a reasonable doubt. But see *Cooper*, 53 Cal. 3d at 1173, 811 P.2d at 753, 282 Cal. Rptr. at 461 (Kennard, J., dissenting) (finding majority's grafting of the carrying away to a place of safety conduct onto the asportation element of robbery to be incongruous with the elements of the offense approach).

A purer example of the elements approach to the duration question may be found in *State v. Baker*, 303 N.J. Super. 411, 697 A.2d 145 (1997). In *Baker*, the defendant was tried and convicted of committing armed robbery as an accomplice or aider and abettor. During deliberations, the jury had inquired of the trial court as

to when the commission of a crime ended. The trial court responded that the jury could consider defendant's immediate flight after the robbery. On appeal, the defendant claimed instructional error in that the court permitted the jury to convict him even if his only participation in the robbery was to drive from the scene after learning of the robbery. The reviewing court first recognized that the crime of robbery is ongoing in nature. Additionally, the court noted that "immediate flight after the attempt or commission," in that case, driving from the scene, constituted an included statutory element of robbery. The instruction, having followed the elements of the offense, was deemed proper.

Based upon the plain language in our accountability statute, we conclude that, for purposes of accountability, the duration of the commission of an offense is defined by the elements of the offense. In this case, we necessarily consider those elements which constitute the offense of armed robbery. Consistent with our accountability statute, a defendant may be held accountable for the commission of armed robbery if, either before or during the commission of the offense, he aided or abetted Jones in "conduct which is an element of [the] offense."

Duration of the Commission of Armed Robbery

Armed robbery is the taking of property "from the person or presence of another by the use of force or by threatening the imminent use of force" while "armed with a dangerous weapon." 720 ILCS 5/18—1, 18—2(a) (West 1994). A taking from the person or presence is met when the property is in the possession or control of the victim and the robber uses violence or fear of violence as the means to take it. *People v. Smith*, 78 Ill. 2d 298, 302-03 (1980). Although the required force or threat of force must either precede or be contemporaneous with the taking of the victim's property (*People v. Foster*, 198 Ill. App. 3d 986, 994 (1990); *People v. Cox*,

197 Ill. App. 3d 1028, 1038-39 (1990)), use of a dangerous weapon at any point in a robbery will constitute armed robbery as long as it reasonably can be said to be a part of a single occurrence (*Foster*, 198 Ill. App. 3d at 994-95). Sufficient force exists where the force used is part of a series of events that constitute a single incident or occurrence. *Foster*, 198 Ill. App. 3d at 995.

Generally, where a victim observes a weapon, a sufficient threat of force exists (*People v. Hollingsworth*, 120 Ill. App. 3d 177, 179-80 (1983)); however, the mere threat of the imminent use will suffice (*People v. Taylor*, 129 Ill. 2d 80, 84 (1989)). In the absence of facts to show that fear was reasonable, a mere subjective feeling of fear will not support a conviction for robbery. *Hollingsworth*, 120 Ill. App. 3d at 179. The offense of robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will. *Smith*, 78 Ill. 2d at 303; see also *People v. Baker*, 365 Ill. 328 (1936) (holding that a robbery is complete when property is moved from its customary location with the intent to deprive the owner of the property, even though escape with the property is thwarted); see also *People v. Campbell*, 234 Ill. 391 (1908).

Consistent with jurisprudence developed in our appellate court, the State construes force to include not only the force used in the taking, but also the force used to effectuate the defendant's departure. See, *e.g.*, *People v. Kennedy*, 10 Ill. App. 3d 519 (1973); *People v. Ditto*, 98 Ill. App. 3d 36 (1981); *People v. Ortiz*, 156 Ill. App. 3d 170 (1987). The appellate court in this case clearly disagreed with this line of reasoning, holding that the robbery ended when the Perez brothers gave up their property. The appellate court's position is, however, consistent with *Smith*, 78 Ill. 2d 298. Jones was criminally liable and the offense of robbery was completed, for purposes of a guilt determination, at the moment in

time when he forcefully took the radio. His conduct beyond the taking neither enhanced nor diminished his criminal culpability for robbery.

*Smith* would appear to be inconsistent with those appellate court cases which have held, in effect, that the robbery continues for as long as force is being used, either to perfect the taking of property or to effectuate a departure from the scene. However, as the State correctly perceives, *Smith* may be read to define the minimum conduct required to constitute a completed robbery. In our view, the appellate court's broad construction of the force element is not an unreasonable one and tends to capture that conduct which is the true essence of an armed robbery offense.

In many instances, flight or an escape is effectuated by use of force. It is the accompanying force which properly continues the commission of the offense. However, the fact that an escape is made possible by reason of the use of force does not render escape an element of the offense. In a case where an escape is accomplished without force, it cannot reasonably be argued that such escape is a part of the substantive offense.

Neither flight from pursuing victims nor escape is included as an element in the statutory definition of robbery. See 720 ILCS 5/18—1(a) (West 1994). Thus, consistent with *Smith*, the offense of armed robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will. Although the force which occurs simultaneously with flight or an escape may be viewed as continuing the commission of the offense (see, *e.g.*, *Kennedy*, 10 Ill. App. 3d 519; *Ditto*, 98 Ill. App. 3d 36; *Ortiz*, 156 Ill. App. 3d 170), it is the force, not escape, which is the essence and constitutes an element of the offense. The commission of an armed robbery ends when force and taking, the elements which constitute the offense, have ceased.

In sum, it has long been emphasized that the gist of the offense of robbery is the force or fear of violence directed at the victim in order to deprive him of his property. *Taylor*, 129 Ill. 2d 80; *Burke v. People*, 148 Ill. 70 (1893). A person who forms the intent to facilitate an escape only after the forceful taking of property has occurred can neither aid nor facilitate the conduct which is an element of robbery. That person is less culpable than the perpetrator and his action serves merely to impede apprehension of the perpetrator. This separate offense is subject to penalization under the current version of our "accessory-after-the-fact" provision. See 720 ILCS 5/31—5 (West 1994).

We acknowledge that, at least in the context of felony murder, we have held that if a killing occurs in the course of an escape from a robbery, the escape is within the operation of the felony-murder rule. That rule had its genesis in *People v. Bongiorno*, 358 Ill. 171, 173 (1934), citing *People v. Boss*, 210 Cal. 245, 290 P. 881 (1930). In *Bongiorno*, this court recognized, as a principle of law, that where two or more persons are engaged in a conspiracy to commit robbery and an officer is murdered while in immediate pursuit of either or both of the offenders who are attempting escape from the scene of the crime with the fruits of the robbery, either in possession of one or both, the crime of robbery is not complete at the time of the murder, inasmuch as the conspirators had not then won their way, even momentarily, to a place of temporary safety, and the possession of the plunder was nothing more than a scrambling possession. Accord *People v. Golson*, 32 Ill. 2d 398, 408 (1965); *People v. Johnson*, 55 Ill. 2d 62, 68 (1973); *People v. Hickman*, 59 Ill. 2d 89, 94 (1974) (holding that the period of time and activities involved in escaping to place of safety are part of crime itself); *People v. Smallwood*, 102 Ill. 2d 190 (1984) (holding that the act of robbery

itself has not necessarily been completed at time victim surrenders the property so that no further consequences will attach to robber's conduct subsequent to surrender of property).

The State does not now seek, and we are not inclined, to extend the felony-murder escape rule to apply in accountability cases. Certain policy considerations inform our decision. Felony murder and accountability have theoretically different underpinnings. Felony murder seeks to deter persons from committing forcible felonies by holding them responsible for murder if a death results. *People v. Viser*, 62 Ill. 2d 568 (1975). Because of the extremely violent nature of felony murder, we seek the broadest bounds for the attachment of criminal liability. For that reason, in felony murder, a defendant's liability is not limited to his culpability for commission of the underlying felony. A defendant may be found guilty of felony murder regardless of a lack either of intent to commit murder (see *People v. Moore*, 95 Ill. 2d 404 (1983)), or even connivance with a codefendant (see *People v. Burke*, 85 Ill. App. 3d 939 (1980)). Our continued adherence to a proximate cause approach is further exemplary of how broadly we seek to extend the reaches of criminal liability in the case of felony murder. See *People v. Lowery*, 178 Ill. 2d 462 (1997); see also *Hickman*, 59 Ill. 2d 89.

Unlike felony murder, accountability focuses on the degree of culpability of the offender and seeks to deter persons from intentionally aiding or encouraging the commission of offenses. Holding a defendant who neither intends to participate in the commission of an offense nor has knowledge that an offense has been committed accountable does not serve the rule's deterrent effect. Further, the attachment of liability in such situations contravenes general concepts of criminal culpability. The felony-murder escape rule contemplates neither

knowledge nor intent. Thus, the rule is irreconcilable with our accountability statute and we decline to apply it in that context. See *In re D.C.*, 259 Ill. App. 3d 637 (1994), *overruled in part*, *People v. Taylor*, 287 Ill. App. 3d 254 (1997) (holding that felony-murder escape rule does not apply for purposes of accountability); accord *Cooper*, 53 Cal. 3d 1158, 811 P.2d 742, 282 Cal. Rptr. 450; but see *Trammel*, 71 Ill. App. 3d 60 (applying felony-murder escape rule outside context of felony murder).

## The Court's Instruction

In answer to the jury's inquiry concerning when the armed robbery had ended, the trial court responded that "you may consider the period of time and activities involved in escaping to a place of safety." The State acknowledges that this instruction is consistent with the felony-murder escape rule as provided in *Hickman*. In fact, the trial court noted that the rule was drawn from *Hickman*, but the court perceived the rule to be, nonetheless, applicable. Regardless, the State argues that based upon the circumstances in this case, the trial court's response to the jury's questions was proper. In the State's view, the appellate court mistakenly assumed that the trial court's response instructed the jurors that they could consider the period of time and the activities involved subsequent to the completed offense of armed robbery. In fact, however, the trial court's instruction merely informed the jury that the offense included the period of time when the victims were attempting to regain control of their property; codefendant was attempting to prevent the victims from regaining possession of their property while, at the same time, to effect a forceful departure from the scene. Therefore, the State argues, the instruction did not erroneously expand the offense of armed robbery.

As we have stated, we agree that the court's instruc-

tion may be interpreted to reference the activity during Jones' flight from his pursuing victims. Nevertheless, as we have stated, neither a defendant's flight from pursuing victims nor escape constitutes an element of the offense of armed robbery. Where force is used to accomplish either flight or escape, such conduct may properly be viewed as continuing the force element of the offense. It is the force involved, not the flight or the escape, which constitutes the offense. In instructing juries on the offense of armed robbery, trial courts should focus on the particular elements of the offense, *i.e.*, taking and use of force. The court's instruction here was a statement of the felony-murder escape rule. As that rule is not applicable for accountability purposes and, further, as escape is not "conduct which is an element of an offense" for which defendant may be held accountable, the court's instruction was erroneous. We next consider the effect of the erroneous instruction.

Harmless Error Analysis

The State argues, generally, that any error caused by the trial court's response to the jury's questions was harmless because the evidence of defendant's knowing participation in the armed robbery was overwhelming. In order for an alleged error in instructions to be considered harmless, it must be demonstrated that the result of a trial would not have been different if the proper instruction had been given. *People v. Johnson*, 146 Ill. 2d 109, 137 (1991); see also *People v. Davis*, 10 Ill. 2d 430, 443 (1957) (holding that an "error in the giving or refusing of instructions will not, alone, justify a reversal when the evidence of the defendant's guilt is so clear and convincing *** that a jury could not reasonably have found the defendant not guilty"); *People v. Fierer*, 124 Ill. 2d 176 (1988) (rejecting harmless error because incorrect instruction might have altered the outcome of the trial).

The State recounts, at length, facts which, according to the State, support at least the inference that defendant was involved in the commission of this offense. The State's theory of the case is that defendant planned to commit the robbery, if not from the time he picked up Jones, then at least from the time that he entered the alley. However, the fact that the jury inquired as to when the robbery ended supports the conclusion that the jury did not find that defendant was involved in planning the robbery either prior to picking up Jones or from the time that he entered the alley.

The State's additionally offered facts (that defendant was able to observe the robbery as it was being committed; that he drove the getaway car; that he failed to report the commission of the offense; that he planned to share in the proceeds; and that his testimony was incredible and inconsistent) are equally unavailing. Not even presence at the scene, coupled with flight or knowledge that a crime is being committed, is sufficient, without more, for accountability purposes. *People v. Taylor*, 164 Ill. 2d 131, 140 (1995); see also *People v. Foster*, 198 Ill. App. 3d 986 (1990). Additionally, to be legally accountable, a driver must knowingly drive the getaway car. See *People v. Ross*, 100 Ill. App. 3d 607 (1981); *People v. Bartlett*, 91 Ill. App. 3d 138 (1980). It was defendant's testimony that he was unaware that a robbery had occurred until after Jones reentered the car. Moreover, defendant's driving speedily from the alley is conduct consistent with his testimony that he feared a "drug bust" had occurred. Further, there was no testimony that the plan to share in the proceeds from the robbery was made prior to Jones' admitting to defendant that he had robbed the Perez brothers. Finally, inconsistencies in testimony, as well as credibility of witnesses, even of the defendant, are issues for the trier of fact to resolve.

In sum, it was defendant's uncontradicted testimony he was unaware of a robbery until Jones reentered his car. It was his further testimony that his actions in the alley, as well as his flight therefrom, were out of concern for being at the drug house. Officer Warner's testimony corroborated defendant's testimony concerning the location of the drug house and drug trafficking activity in the alley. While it is conceivable that defendant was a part of the armed robbery, it is just as conceivable that his presence in the alley and subsequent conduct were related to drug-trafficking activity. The escape could have been from the perceived "drug bust" as easily as it could have been from the robbery.

Incidentally, and as the State argues, if in fact the appellate court perceived the trial court's instruction to reference defendant's driving from the scene, it is reasonable to conclude that the jury might also have interpreted the instruction to fix the escape at the time of the car getaway. There is no evidence that the use of force, once Jones was inside the car, continued. Even if the jury believed defendant's version of the facts, the instruction that it could "consider the period of time and activities involved in escaping to a place of safety" might have provided the basis for the guilty verdict. But for the erroneous instruction, which, in response to the jury's completion inquiry, told the jury that it could consider escape, the result at trial might have been different.

On this record, we do not find evidence in support of defendant's armed robbery conviction so clear and convincing as to render the erroneous instruction harmless beyond a reasonable doubt. *Cf. Cooper*, 53 Cal. 3d 1158, 811 P.2d 742, 282 Cal. Rptr. 450 (holding that because escape and asportation coincided, and there was no evidence to the contrary, erroneous instruction was harmless beyond reasonable doubt).

### Defendant's Cross-Appeal

In his cross-appeal, defendant claims error in the prosecution's closing argument and in the use of his explanation to the police to discredit his trial testimony. Because we have decided that the trial court's erroneous instruction was reversible error, we do not address these claims.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the appellate court, which reversed defendant's conviction and remanded the cause to the circuit court for retrial. As there is sufficient evidence upon which a jury may base a conviction for armed robbery, upon retrial, defendant will not be subjected to double jeopardy.

*Appellate court judgment affirmed.*

JUSTICE NICKELS, dissenting:

I disagree with the majority's cramped, unrealistic interpretation of the phrase "during the commission of an offense" as used in section 5—2 of the Criminal Code. In the majority's view, for accountability purposes the duration of an offense coincides precisely with the formal elements of the offense. The majority ostensibly reaches this conclusion by considering the phrase in conjunction with section 5—1 of the Criminal Code. However, the thrust of section 5—1 is simply that an individual may be held responsible for the elements of an offense based not only on his or her own conduct but also on conduct for which he or she is accountable. That does not tell us what we need to know in this case: *When is one person accountable for the conduct of another?* In the majority's view, aiding or abetting must occur before all of the elements of the offense have been completed. In the State's view, the "commission" of an offense includes both the formal elements of the offense and contemporaneous,

closely related events as well. In either case, one who participates in the commission of an offense is accountable for the primary offender's conduct pursuant to section 5—2, and is therefore responsible for the elements of the offense under section 5—1. Accordingly, section 5—1 does not resolve the issue before this court.

To justify its approach, the majority suggests that one who aids or abets a robbery before the robber has gained control of the loot is more culpable than one whose involvement begins immediately after that point. I do not believe, however, that the degree of culpability in the two situations is *qualitatively* different so as to affect the determination of criminal responsibility. Armed robbery is a crime of violence, and while the robber is still at the scene, trying to make good his or her escape, the danger of violence inherent in the offense persists. This is true whether or not the robber actually uses force in making his getaway. In my view, this consideration amply warrants imposing accomplice liability on one who assists an armed robber in his immediate flight from the crime.

As the majority is forced to acknowledge, its definition of the duration of an offense is inconsistent with the definition governing application of the statutory felony murder rule under section 9—1(a)(3) of the Criminal Code (720 ILCS 5/9—1(a)(3) (West 1996)). Illinois courts have also rejected a rigid, technical "elements of the offense" approach like the majority's in other settings. For instance, under section 12—14(a)(2) of the Criminal Code (720 ILCS 5/12—14(a)(2) (West 1996)), the offense of criminal sexual assault is enhanced to aggravated criminal sexual assault if the offender caused bodily harm to the victim "during the commission of the offense." It has been held that injuries inflicted after a sexual assault will support a conviction of aggravated criminal sexual assault when the acts causing injury

"were part of an unbroken series of events and were both very near in time and closely linked to the forced sexual acts." *People v. Thomas*, 234 Ill. App. 3d 819, 825 (1992); see also *People v. Colley*, 188 Ill. App. 3d 817 (1989). I believe that the offense of armed robbery should be viewed in similarly fluid terms for purposes of determining accountability. Accordingly, I dissent.