# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Phillips*, 2012 IL App (1st) 101923

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNMEL PHILLIPS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-1923 |
| Filed<br>Rehearing denied | May 15, 2012<br>June 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for aggravated battery with a firearm and aggravated discharge of a firearm on an accountability theory were reversed due to the insufficiency of the evidence, since there was no evidence that defendant knew, before the incident in which defendant's companion fired a handgun at two other men, missing one and hitting the other, that his companion was armed with a firearm, and despite the evidence that defendant blocked the victims with his vehicle and planned to commit a crime against them, there was no evidence he intended to assist his companion attack them with a firearm, and without evidence that defendant knew his companion had a firearm, the State could not prove beyond a reasonable doubt that defendant intended to help his companion commit offenses requiring the use of a firearm. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-12552; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Reversed. |

| | |
|---|---|
| Counsel on Appeal | Michael J. Pelletier and Jonathan Steffey, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Adam W. Delderfield, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Justice Cunningham concurred in the judgment and opinion. Presiding Justice Quinn dissented, with opinion. |

## OPINION

¶ 1      This appeal is a companion case to our recent decision in *People v. Sanders*, 2012 IL App (1st) 102040. Defendant Johnmel Phillips and his codefendant, Dontrell Sanders, were tried together at a bench trial, at which they were both found guilty of aggravated battery with a firearm and aggravated discharge of a firearm. Whereas Sanders was found directly guilty of the crimes, defendant's conviction was based on accountability for Sanders' actions under section 5-2 of the Criminal Code of 1961 (720 ILCS 5/5-2 (West 2010)). Defendant now argues (1) that there was insufficient evidence to establish his guilt under an accountability theory, and (2) that the trial court erroneously admitted prejudicial gang evidence and hearsay evidence during the trial. We reverse.

¶ 2                            BACKGROUND

¶ 3      As we previously recounted in *Sanders*, the basic facts of this case are straightforward. Late at night in May 2009, Reginald Lewis and Denzell Gresham were driving southbound on Homan Avenue in Chicago, looking for a place to park. They were unable to find an open space on the west side of Homan near their destination, so Lewis, the driver, decided to make a U-turn at the intersection of Homan and 21st Street in order to return northbound on Homan and find a space on the east side of the street. As they made the U-turn, however, they suddenly found themselves on a collision course with another vehicle that had also been driving southbound on Homan behind them. The other vehicle, a black Charger, started to turn left onto 21st Street as Lewis executed his U-turn in the intersection. The two vehicles nearly collided but stopped within inches of each other.

¶ 4      Because of the glare from the streetlights on the other vehicle's windshield, Lewis and Gresham were unable to see the occupants of the other vehicle. The two vehicles sat facing each other for about 15 seconds, but no words were exchanged and no one got out of either vehicle. The other vehicle backed up about 10 to 15 feet into the northbound lane of Homan

and, as it backed up, the glare came off of its windshield. Lewis recognized the driver as defendant, whom he had grown up with and been acquainted with for several years.

¶ 5 Lewis was now unable to proceed northbound on Homan because the other vehicle was in the way. Gresham alerted Lewis that someone was getting out of the back driver's side door of the other vehicle, which was on the side of the Charger facing away from Lewis' vehicle. The person moved around the other vehicle and approached Lewis and Gresham's vehicle. Lewis began to turn the wheel of his vehicle in order to proceed eastbound down 21st Street. As the approaching individual passed under a streetlight, Lewis recognized him as Sanders, whom he also knew. When Sanders got to within 15 or 25 feet from Lewis' vehicle, he raised a handgun and began firing at the vehicle. Lewis and Gresham ducked down in order to protect themselves but Lewis was hit in the back by a round, breaking two ribs and grazing his lungs. Lewis immediately drove the car away from the scene eastbound down 21st Street and then to Mt. Sinai Hospital. Though he collapsed in the entryway upon arrival, he ultimately recovered from his wound.

¶ 6 Lewis and Gresham did not see what happened immediately after the shooting, but another witness did. Kirk Utley testified that he was about six houses away from the intersection when he heard gunshots. He looked toward the intersection and saw a man running down the street shooting a firearm. A car then pulled up, the shooter got in, and the car drove off eastbound down 21st Street. During the defense case in chief, however, the parties entered the stipulated testimony of a police officer who interviewed Utley about the shooting. According to the stipulated testimony, Utley told the officer that he "did not see the shooter's face or the type of vehicles involved because his view was blocked by trees." Moreover, the officer "was never told by Mr. Utley that the person shooting the gun got into the automobile after the shooting."

¶ 7 One final piece of evidence was introduced at trial. As it happened, Lewis had been involved in a hit-and-run accident in which someone died about a year before the shooting. A criminal case against Lewis was pending at the time of trial in this case. The State's theory was that the motive behind the shooting in this case was retaliation against Lewis for the accident. To support this theory, the State introduced evidence that defendant and Sanders had been present at a court hearing for the accident case along with several other associates of the accident victim. Part of this evidence included statements by Lewis about defendant's and Sanders' alleged gang membership, as well as hearsay statements by Lewis' mother regarding alleged threats against Lewis made by defendant. The trial court allowed the testimony, but stated on the record that it was admitting the evidence only to explain the basis of Lewis' identification of defendant, not for the truth of the matter asserted. (For a detailed recitation and discussion of this evidence, see *Sanders*, 2012 IL App (1st) 102040, ¶¶ 17-32.)

¶ 8 The trial court ultimately found both defendants guilty of aggravated battery with a firearm and aggravated discharge of a firearm, with Sanders being directly guilty for the crimes and defendant being guilty under an accountability theory. The trial court sentenced defendant to six years' incarceration, the minimum sentence allowed by law. (Sanders received 10 years for his role in the crimes.)

¶ 9                                    ANALYSIS

¶ 10       Defendant raises two arguments on appeal. First, defendant argues that the evidence was
           insufficient to prove him guilty of the offense under an accountability theory. Unlike
           *Sanders*, defendant does not challenge the sufficiency of the eyewitness testimony and
           identification. *Cf. id.* ¶¶ 6-15. Instead, defendant contends that there is insufficient evidence
           that he and Sanders shared a common criminal design to commit the crime, which is a
           requirement to prove guilt by accountability. Second, as in *Sanders*, defendant argues that
           the trial court erroneously admitted the gang evidence and hearsay evidence regarding the
           threats. *Cf. id.* ¶¶ 17-32 (raising the same issue).

¶ 11       The standard of review for sufficiency-of-the-evidence challenges is well settled:

               "When considering a challenge to a criminal conviction based upon the sufficiency
           of the evidence, this court will not retry the defendant. [Citation.] Rather, in such cases
           the relevant question is whether, after viewing the evidence in the light most favorable
           to the prosecution, any rational trier of fact could have found the essential elements of
           the crime beyond a reasonable doubt. [Citation.] Thus, it is our duty in the case at bar to
           carefully examine the evidence while giving due consideration to the fact that the court
           and jury saw and heard the witnesses. [Citations.] If, however, after such consideration
           we are of the opinion that the evidence is insufficient to establish the defendant's guilt
           beyond a reasonable doubt, we must reverse the conviction. [Citations.] The testimony
           of a single witness, if it is positive and the witness credible, is sufficient to convict.
           [Citations.] While credibility of a witness is within the province of the trier of fact, and
           the finding of the jury on such matters is entitled to great weight, the jury's determination
           is not conclusive. Rather, we will reverse a conviction where the evidence is so
           unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of
           defendant's guilt." *People v. Smith*, 185 Ill. 2d 532, 541-42 (1999).

¶ 12       There is no dispute in this case that Sanders, not defendant, shot Lewis and fired a
           weapon at Gresham. Whereas the trial court found Sanders directly guilty of the crime,
           defendant's conviction for the crime is based on principles of legal accountability for
           Sanders' actions. Criminal accountability for the actions of another person under Illinois law
           is governed by section 5-2 of the Criminal Code of 1961 (720 ILCS 5/5-2 (West 2010)). As
           relevant to this case, it reads:

           "When accountability exists. A person is legally accountable for the conduct of another
           when:

                                                * * *

               (c) either before or during the commission of an offense, and with the intent to
           promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts
           to aid that other person in the planning or commission of the offense.

               When 2 or more persons engage in a common criminal design or agreement, any acts
           in the furtherance of that common design committed by one party are considered to be
           the acts of all parties to the common design or agreement and all are equally responsible
           for the consequences of those further acts. Mere presence at the scene of a crime does not
           render a person accountable for an offense; a person's presence at the scene of a crime,

                                                  -4-

however, may be considered with other circumstances by the trier of fact when determining accountability." 720 ILCS 5/5-2 (West 2010).

Subsection (c), which was the basis for the charges against defendant, is known as the "common design" rule.

¶ 13 The analysis in common-design cases is a fact-driven one, as the supreme court summarized in *People v. Taylor*, 164 Ill. 2d 131, 140-41 (1995)[1]:

"Mere presence of a defendant at the scene of a crime does not render one accountable for the offense. [Citations.] Moreover, presence at the scene plus knowledge that a crime was being committed, without more, is also insufficient to establish accountability. [Citation.] Nevertheless, active participation has never been a requirement for the imposition of criminal guilt under an accountability theory. [Citation.] One may aid and abet without actively participating in the overt act. [Citation.]

A defendant may be deemed accountable for acts performed by another if defendant shared the criminal intent of the principal, or if there was a common criminal plan or purpose. [Citations.] Words of agreement are not necessary to establish a common purpose to commit a crime. The common design can be inferred from the circumstances surrounding the perpetration of the unlawful conduct. [Citations.] Proof that defendant was present during the perpetration of the offense, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining the defendant's legal accountability. [Citation.] Defendant's flight from the scene may also be considered in determining whether defendant is accountable. [Citation.] Evidence that defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design also supports an inference that he shared the common purpose and will sustain his conviction for an offence committed by another. [Citation.]"

Accord *People v. Williams*, 193 Ill. 2d 306, 338-39 (2000).

¶ 14 The State acknowledges that its case for defendant's accountability is circumstantial. The State relies on four facts from which defendant's participation in a common design can be inferred, arguing as follows:

"Defendant [1] transported the shooter [*i.e.*, Sanders] to the scene of the offense, and then [2] used his vehicle to force the victim to stop driving. When the victim was successfully stopped, [3] defendant repositioned his car so as to cut off all traffic in the victim's lane, trapping him. After co-defendant Sanders had opened fire, [4] defendant proceeded to drive up and allow Sanders to re-enter the vehicle."

¶ 15 It is helpful to first discuss in detail what the State must prove in order to establish guilt by accountability. As defined in section 5-2(c), individuals can only be guilty by

---

[1]It should be noted that there are two different Illinois Supreme Court cases known as *People v. Taylor* that deal with this subject in the context of aggravated battery with a firearm, the first being issued in 1995 and the second in 1999. It is easy to confuse the two, but the distinction is important because the results were different. Compare *People v. Rico Taylor*, 164 Ill. 2d 131 (1995) (conviction affirmed), with *People v. Tory R. Taylor*, 186 Ill. 2d 439 (1999) (conviction reversed).

accountability under the common-design rule if they (1) intend to help the principal plan or commit the offense, (2) do some act that helps the principal plan or commit the offense, and (3) both form the requisite intent and perform the requisite act before or during the commission of the offense itself. See 720 ILCS 5/5-2(c) (West 2010). The crucial question in many cases, then, is at what point in time the defendant formed the intent to assist the principal and did a particular act that aided the principal. This makes the duration of the offense itself a key component of any analysis because any act performed or intent formed by the defendant *after* the offense is complete is irrelevant for the purpose of establishing accountability.

¶ 16    In *People v. Dennis*, 181 Ill. 2d 87, 101 (1998), the supreme court held that, "for purposes of accountability, the duration of the commission of an offense is defined by the elements of the offense." The focus of our analysis, therefore, is on whether the State has proven that defendant, either before or during the commission of the offense, intentionally aided or abetted Sanders in conduct that is an element of the offense. *Cf. id.* at 101-06 (examining the offense of armed robbery in order to determine its duration). In this case, defendant was found accountable for two of Sanders' crimes: aggravated battery with a firearm and aggravated discharge of a firearm. Individuals are guilty of aggravated battery with a firearm when they "[d]ischarge[ ] a firearm, other than a machine gun or a firearm equipped with a silencer, and causes any injury to another person" (720 ILCS 5/12-3.05(e)(1) (Supp. 2011) (formerly 720 ILCS 5/12-4.2(a)(1) (West 2010)))[2] and they are guilty of aggravated discharge of a firearm when they "[d]ischarge[ ] a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person" (720 ILCS 5/24-1.2(a)(2) (West 2010)). As is readily apparent from the language of the statutes, the first crime is complete when the defendant discharges a firearm and a person is injured, and the second is complete when the defendant knowingly discharges a firearm in the direction of a person or vehicle. Importantly, neither flight nor escape is an element of the offenses. *Cf. Dennis*, 181 Ill. 2d at 103 (analyzing the elements of armed robbery).

¶ 17    The duration of an offense is important because it temporally limits the evidence that may be used to prove accountability for the offense. In *Dennis*, one important fact that was used to prove the defendant in that case guilty at trial was that he helped the principal escape from the scene of an armed robbery. See *id.* at 90-91. The supreme court held, however, that the defendant's assistance in fleeing the scene was irrelevant to proving accountability for the robbery because it occurred after the offense was already complete. See *id.* at 106-07 (finding that the trial court erred by instructing the jury to consider " 'the period of time and activities involved in escaping to a place of safety' " in determining the defendant's accountability for the robbery). Notably, the supreme court declined to extend the felony-murder escape rule (which considers escape from an offense to be a part of the offense) to escape in accountability cases, explaining:

    "Unlike felony murder, accountability focuses on the degree of culpability of the

<hr>

[2]Public Act 96-1551(eff. July 1, 2011) amended and reorganized a significant portion of the Criminal Code.

offender and seeks to deter persons from intentionally aiding or encouraging the commission of offenses. Holding a defendant who neither intends to participate in the commission of an offense nor has knowledge that an offense has been committed accountable does not serve the rule's deterrent effect. Further, the attachment of liability in such situations contravenes general concepts of criminal culpability. The felony-murder escape rule contemplates neither knowledge nor intent. Thus, the rule is irreconcilable with our accountability statute and we decline to apply it in that context." *Id.* at 105-06.

¶ 18      This result is largely driven by the fact that accountability is determined only by a defendant's actions before or during an offense (see 720 ILCS 5/5-2(c) (West 2010)), and the fact that facilitation of a principal's escape after the fact is punishable as a crime in its own right (see 720 ILCS 5/31-5 (West 2010)). See *Dennis*, 181 Ill. 2d at 104 ("A person who forms the intent to facilitate an escape only after the forceful taking of property has occurred can neither aid nor facilitate the conduct which is an element of robbery. That person is less culpable than the perpetrator and his action serves merely to impede apprehension of the perpetrator. This separate offense is subject to penalization under the current version of our 'accessory-after-the-fact' provision.").

¶ 19      Turning to this case, the State relied heavily on the facts surrounding the getaway, as testified to by Utley, in its brief and again at oral argument as proof that defendant intended to aid Sanders in the shooting. Defendant urges us to disregard Utley's testimony about Sanders' getaway on the ground that Utley was impeached at trial on his ability to observe the scene. Credibility determinations such as this one, however, are largely for the trier of fact to resolve. See *Smith*, 185 Ill. 2d at 541-42. Utley testified that he saw Sanders get back in the vehicle, and there was also evidence submitted that impeached his testimony. Yet we cannot say that the impeachment evidence was so overwhelming that we will disregard the trial court's decision to find Utley credible, so at least for purposes of sufficiency-of-the-evidence review we must consider Sanders' reentry into defendant's vehicle following the shooting to be a proven fact.

¶ 20      The problem is that, in light of *Dennis*, the getaway is not something that the trier of fact is legally entitled to consider in this situation. See *Dennis*, 181 Ill. 2d at 106-07. The mere fact that Sanders reentered defendant's vehicle and fled the scene after the shooting is irrelevant to proving that defendant was accountable for the shooting. As in *Dennis*, defendant's action in this regard occurred *after* Sanders' crime was complete. By the time that Sanders got back in the vehicle he had already performed every element of both crimes by discharging his firearm at Lewis and Gresham's vehicle, which he knew to be occupied, thereby wounding Lewis. By itself, the fact that defendant helped Sanders escape from the scene does not tell us whether he formed the intent to aid Sanders before or after the crime took place. There must be some other evidence that defendant intended to help Sanders commit the offense in order for defendant to be accountable for the crime. Accord *People v. Taylor*, 186 Ill. 2d 439 (1999).

¶ 21      The State also relies on the fact that defendant was the driver of the vehicle, or in the State's words, that defendant "transported the shooter to the scene of the offense." The inference is that defendant must have intentionally aided Sanders in the shooting because he

took him to the place where the shooting happened. This argument presumes, however, that defendant knew *before* the incident that Sanders planned to shoot the victims. Yet the State has offered no evidence that defendant was aware that Sanders intended to shoot the victims before he actually did so. In fact, there is no evidence in the record from which we can rationally infer that defendant even knew Sanders had a gun in his possession until after Sanders got out of the vehicle and began firing at the victim's car.

¶ 22    The lack of evidence about the gun is crucial in this case because defendant was found to be accountable for offenses that involved a firearm. Indeed, when we pressed the State about this point at oral argument, the State conceded that defendant "would have to know that there is a gun" *before the shooting* in order to be accountable for Sanders' crimes. Oral Argument at 32:03, People v. Phillips, No. 1-10-1923 (Mar. 27, 2012), *available at* http://www.state.il.us/court/Media/Appellate/1st_District.asp. Even if we were to assume that defendant intended to help Sanders commit some crime against the victims, he cannot logically have intended to help Sanders commit a crime that he does not know is possible. If defendant did not know that Sanders had a gun, then regardless of what else defendant may have done he cannot have intended to help Sanders commit a crime that necessarily requires a firearm, and he therefore cannot be accountable for it.

¶ 23    Yet even had the State proven that defendant knew that Sanders was carrying a gun while Sanders was a passenger in defendant's vehicle, such a fact would not be dispositive on the issue of accountability. In *People v. Taylor*, 186 Ill. 2d 439, 442 (1999), the defendant was the driver of a vehicle and was aware that his front-seat passenger was armed with a firearm. When the vehicle became involved in a traffic altercation, the passenger jumped out and fired at the other vehicle, and then reentered the vehicle and fled the scene with the defendant. See *id.* at 443. The supreme court reversed the defendant's conviction for aggravated battery with a firearm, noting that neither the defendant's presence at the scene of the crime, his acquiescence to the shooter's possession of the handgun, nor his transportation of the shooter away from the scene was sufficient evidence of his accountability. See *id.* at 446-49. Similarly in this case, even if there was evidence that defendant knew that Sanders had a gun prior to the shooting, that fact would not be sufficient evidence to prove that defendant is accountable for the crime. But there is not a shred of evidence that proves defendant knew that Sanders had a gun.

¶ 24    The State, however, argues that there are two other facts from which defendant's intent to aid Sanders might be inferred: the near-collision after the U-turn and the repositioning of defendant's vehicle. The State asserted at oral argument that these facts are circumstantial evidence that defendant was carrying out his part in a well-coordinated ambush. In the State's view, the evidence shows that defendant deliberately trapped the victim's vehicle as it attempted to make a U-turn and then maneuvered his vehicle in such a way that it trapped the victims and prevented them from escaping, thus allowing Sanders to exit the vehicle and shoot the victims while they were immobilized.

¶ 25    But the actual testimony in the record does not support this theory. Contrary to the State's characterization, the evidence nowhere indicates that the near collision between the vehicles following the U-turn was deliberate. On cross-examination, Gresham testified that he did not know whether Lewis used his turn signal prior to making the U-turn in the intersection of

-8-

Homan and 21st. Moreover, Gresham specifically testified that defendant's vehicle did not block the victims in:

"Q. And what happened when you and [Lewis] were looking for a parking spot for the minivan?

A. Charger came, blocked us off. Somebody got out shooting.

\*\*\*

Q. Okay. And how did this car block you?

A. What do you mean?

Q. You said a black car, black Charger, came up and blocked you guys, right?

A. Yes. *It wasn't really blocked. But it was in front.*" (Emphasis added.)

¶ 26 Perhaps more importantly, Lewis testified that defendant's vehicle was attempting to make a left-hand turn onto 21st when Lewis made his U-turn:

"In doing so, I made it to Homan and 21st. I made the u-turn. Then I got cut off. So, I thought it was–

Q. I'll stop you. You say you got cut off, what do you mean by that?

A. A car blocked me.

Q. What kind of car was it?

A. Black Charger.

Q. How did it block you?

A. *It was like making a left turn. Then, as we almost collided*, we both stopped." (Emphasis added.)

Lewis later added that the vehicles were so close that "we stopped on a dime, like almost about to collide."

¶ 27 The victims' vehicle was not trapped, contrary to the State's argument. More importantly, there is no indication that defendant deliberately forced the victims' vehicle to stop. At most, the evidence shows that defendant was deliberately attempting to turn left onto 21st at the same time as the vehicle that was travelling in front of his executed a sudden U-turn that may or may not have been previously announced via a turn signal. Of course, even had Lewis used his turn signal, he would only have been announcing a left-hand turn onto 21st Street, not a U-turn in the intersection. It is unreasonable to assume that defendant's left-hand turn under these circumstances unequivocally shows that he intentionally forced the victims' vehicle to stop.

¶ 28 The testimony is similarly inconclusive regarding the repositioning of defendant's vehicle. After the vehicles came to a halt, Lewis testified:

"Q. Initially you couldn't see who was inside the car?

A. Yes.

Q. There were street lights on 21st Street?

A. Yes.

Q. Okay. What happened next?

A. Then after we stared, the car backed. Like cut off northbound traffic. I couldn't go finish my u-turn and go north. That's when the glare came off the windshield. I was able to see who was driving the car."

On cross-examination, Lewis clarified:

"Q. So, the charger backed up, is that correct.

A. Yes.

\*\*\*

Q. \*\*\* Before the Charger backed up, there was about ten or fifteen seconds where the two cars just sat there, isn't that right?

A. Yes.

Q. And nobody in this Charger said anything to you, isn't that right?

A. No. No words were exchanged.

Q. No words were exchanged. And then the Charger backed up, correct?

A. Yes.

Q. And when the Charger backed up, you decided to go east on 21st Street, is that correct?

A. No.

Q. No. When did you decide to go east on 21st Street?

A. When I saw the individual on the back driver's side get out the car.

Q. Was that after the car backed up?

A. Yes.

Q. So, the car backed up and then the guy got out, is that correct?

A. Yes.

Q. How far did the car back up, sir?

A. Just far enough to cut off traffic. So, I don't know exactly how far it was. Just to cut off northbound traffic, so I couldn't go north. I couldn't get past.

Q. Was there also room for that car, the Charger, then to go south on Homan?

[Objection made and overruled.]

A. Yes

Q. But it didn't do that, right?

A. No.

\*\*\*

Q. The person with the gun came to the middle of 21st Street to shoot at you?

A. Yes. Came right in the middle of the intersection. Like the Charger backed up. Like the front end of the Charger was facing the same way I was facing. But the way they cut the street off, they couldn't go forward. Like they blocked the intersection, like so. It was like how cars park in a block party. That's how the Charger was."

Nowhere in this testimony is there any evidence that defendant deliberately maneuvered

his vehicle in order to prevent the victims from escaping while Sanders attacked. Although Lewis noted that defendant's vehicle blocked off the northbound lane of Homan when it backed up, the victims were not trapped: Lewis' vehicle was still in the intersection and was able to turn left or right onto 21st Street, as well as go back southbound on Homan the direction it had originally been traveling. Moreover, the fact that defendant's vehicle did not proceed south on Homan tells us nothing about defendant's intentions. Defendant had originally been turning eastbound onto 21st Street when the vehicles nearly collided, and it appears that the victims' vehicle was sufficiently far into the intersection that defendant's vehicle could not complete its turn onto 21st Street. The evidence is hardly conclusive that defendant was deliberately trying to trap the victims in preparation for an ambush.

¶ 30 Even so, construing this evidence in the light most favorable to the State and assuming for the sake of argument that defendant *did* intend to forcibly halt the victims' vehicle and block them in, we cannot overlook the insurmountable hurdle that there is no evidence that defendant knew before the shooting that Sanders was armed with a gun. Even if the evidence showed that defendant deliberately trapped the victims and plotted to commit some crime against them, there is no evidence that he intended to help Sanders attack them *with a firearm*. The State sought to prove defendant guilty by way of accountability for Sanders' crimes of aggravated battery with a firearm and aggravated discharge of a firearm, so the State ultimately had to prove that defendant intended to help Sanders commit those particular offenses. Without some evidence that defendant knew that Sanders had a gun, even if defendant deliberately trapped the victims with his vehicle, the State cannot prove beyond a reasonable doubt that defendant intended to help Sanders commit offenses that required the use of a firearm.

¶ 31                                                        CONCLUSION

¶ 32 We must conclude that the State did not present sufficient evidence to prove defendant guilty beyond a reasonable doubt for Sanders' crimes under an accountability theory. Based on our disposition of this case, we do not reach defendant's second contention on appeal.

¶ 33 Reversed.

¶ 34 PRESIDING JUSTICE QUINN, dissenting.

¶ 35 I respectfully dissent. The majority outright reverse a conviction imposed after a bench trial in which Phillips drove his car in a way to block the victim's car, his passenger, Sanders was armed with a handgun as he exited Phillips' car and Sanders fired multiple shots at the victims. Phillips followed Sanders in his car, stopped the car to allow Sanders to enter into it and Phillips then drove Sanders from the scene. The trial judge heard the testimony of the two victims who testified that Phillips' car had blocked the victims' car. A third eyewitness, Kirk Utley, testified that he heard between five and eight gunshots coming from the intersection. He saw a person running eastward on 21st Street, firing in that same direction. A black Chrysler pulled up and the shooter entered. Neither defendant testified.

¶ 36 Initially, the majority rely on the holding in *People v. Dennis*, 181 Ill. 2d 87 (1998). The facts in *Dennis* are inapposite to those here. In *Dennis*, the defendant dropped off a friend, Jones, at a location to purchase narcotics. The defendant pulled into a "T" alley where he could not see what Jones was doing after being dropped off. The defendant testified that he had no idea that Jones had committed a robbery until Jones was back in his car. *Dennis*, 181 Ill. 2d at 108. Here, it was Phillips who drove his car in a manner which blocked the victims' car. It is clear that Phillips knew whom he was blocking as he and the victims had grown up together. Similarly, Phillips knew that Lewis had killed one of Phillips' fellow gang members before Phillips drove Sanders up to the victims' car.

¶ 37 The majority assert that "in light of *Dennis*, the getaway is not something that the trier of fact is legally entitled to consider in this situation. *Dennis*, 181 Ill. 2d at 106-07." *Supra* ¶ 20. This holding is directly contrary to that espoused by our supreme court in *People v. Taylor*, 164 Ill. 2d 131, 140-41 (1995), quoted by the majority at paragraph 13:

> "Words of agreement are not necessary to establish a common purpose to commit a crime. The common design can be inferred from the circumstances surrounding the perpetration of the unlawful conduct. [Citations.] Proof that defendant was present during the perpetration of the offense, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining the defendant's legal accountability. [Citation.] Defendant's flight from the scene may also be considered in determining whether defendant is accountable."

¶ 38 Taylor makes clear that a trier of fact may base his finding of accountability on proof that defendant (1) was present during the perpetration of the crime, (2) maintained a close affiliation with his companion after the commission of the crime, (3) that defendant failed to report the crime, and (4) defendant fled the scene of the crime. Three of these factors by definition occur after the crime has been committed. It was uncontested at trial and on appeal that all four of these factors are present in this case. As to the third factor, that defendant failed to report the crime, there was absolutely no evidence that defendant did so. The *Taylor* court affirmed the convictions of two unarmed passengers for murder based on a theory of accountability.

¶ 39 The majority assert that there is insufficient evidence to support the State's argument that Phillips blocked the victim's car with his car. This is an inference properly determined by the trier of fact. "[T]he trier of fact is not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt. [Citations.] *** The trial judge, who saw and heard all of the witnesses, *** was in a much better position than are we to determine their credibility and the weight to be accorded their testimony." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009).

¶ 40 This was not a close case. One cannot look at the facts in a light most favorable to the State and accord the proper weight to the trial court's findings and come to the conclusion reached by the majority. There is simply no way that the evidence was "so improbable or unsatisfactory that no rational trier of fact could have found defendant guilty beyond a reasonable doubt." *People v. Siguenza-Brito*, 235 Ill. 2d at 230.

-12-

¶ 41     Consequently, I would affirm the defendant's conviction.