# Illinois Official Reports

## Appellate Court

---

### *People v. Phillips*, 2014 IL App (4th) 120695

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEMETRICE C. PHILLIPS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0695 |
| Filed | June 18, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for first degree murder and aggravated possession of a weapon by a felon on an accountability theory were upheld over his contentions that his companion's shooting of the victim was not in furtherance of their original plan, that defendant had withdrawn from the original plan and that defendant did not share his companion's intent, since defendant became liable for all of the crimes his companion committed when he joined his companion in their plan to seek revenge, including the fatal shooting of the victim, defendant failed to establish that he withdrew from the original plan for purposes of the common-design rule, and, furthermore, the State was not required to prove that defendant shared his companion's intent but, rather, the State only had to prove the intention to commit a crime. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 06-CF-1346; the Hon. Lisa Holder White, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal    Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Ellen J. Curry and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel    JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Harris concurred in the judgment and opinion.

## OPINION

¶ 1    On September 7, 2006, defendant, Demetrice C. Phillips, went to a house in Decatur planning to attack a woman who fought with his ex-girlfriend earlier that day. Defendant intended to give the woman a black eye because his ex-girlfriend suffered a black eye when a brick struck her in the face during the earlier altercation. Defendant was accompanied by Shaunessy Grimes, who, anticipating that crowd control might be necessary, brought a rifle. After approaching the house from a back alleyway, defendant and Grimes realized that the crowd outside the house was too large for them to carry out their plan. Before leaving, Grimes fired a single shot from the rifle in the direction of the crowd. The .22-caliber bullet struck Jeremiah Maclin in the back of the head, killing him. After learning of Maclin's death, defendant tossed the rifle into the Sangamon River.

¶ 2    In May 2012, based upon these largely undisputed facts, the trial court, in a bench trial, found defendant guilty of first degree murder (720 ILCS 5/9-1(a)(2) (West 2006)) and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2006)). In July 2012, the court sentenced defendant to 35 years in prison for first degree murder and 10 years in prison for aggravated possession of a weapon by a felon, with both sentences to run concurrently.

¶ 3    Defendant appeals, arguing that the State failed to prove him guilty of first degree murder beyond a reasonable doubt because (1) Grimes's shooting of Maclin was an independent act not done in furtherance of the original plan, (2) defendant had withdrawn from the original plan, and (3) defendant did not share Grimes's intent. We disagree and affirm.

¶ 4                              I. BACKGROUND

¶ 5    The following pertinent facts, which defendant does not dispute, were gleaned from evidence presented at trial.

¶ 6        On September 7, 2006, Stephanie Boyd (the mother of defendant's two children) and Breanna Turner (the mother of Grimes's child) got into a brawl with Quinishia Frazier and several other young women because Turner suspected Frazier of being romantically involved with Grimes. During the skirmish, which occurred outside Frazier's house on the corner of Marietta and Vandyke Streets in Decatur, Boyd was struck in the face with a brick, causing her eye to swell shut.

¶ 7        After the fight ended, Boyd and Turner went to defendant's house and told him what happened. Boyd then drove Turner and defendant to Turner's mother's house, where they met up with Grimes. All four agreed to go to Marietta and Vandyke Streets to confront Frazier. On the way, the group stopped by Grimes's house so that Grimes could retrieve his .22-caliber, single-shot rifle. Boyd then drove to the area of Vandyke and Marietta Streets, where the fight with Frazier had occurred earlier in the day.

¶ 8        It was dark outside when the group arrived in the area of Marietta and Vandyke Streets. Traveling east on Marietta Street, Boyd drove past a large crowd at the intersection of Vandyke Street and turned south onto Pine Street. Defendant told Boyd to turn west off Pine Street into an alleyway that ran behind the houses on Marietta Street. Boyd parked the car in the alleyway and defendant and Grimes got out. Grimes carried the rifle. Boyd and Turner stayed in the car.

¶ 9        Defendant testified that he got out of the car planning to hurt somebody. Specifically, defendant wanted to find Frazier and "swell her eye up." Because defendant did not know Frazier, Grimes was to point her out for him. Defendant also told Grimes to make sure that nobody jumped him while he attacked Frazier, and he anticipated that Grimes would use the rifle to accomplish that task.

¶ 10        Defendant and Grimes walked west down the alleyway and cut north between a pair of houses. Defendant and Grimes hid behind the houses for several minutes under the cover of darkness and observed a crowd of approximately 15 to 30 people gathered on the southeast corner of Marietta and Vandyke Streets. Upon realizing how large the crowd was, defendant told Grimes that he "was not fitting to get jumped," which meant that he did not want to attack Frazier because he would probably get attacked by members of the crowd if he did so.

¶ 11        Defendant testified that he "was fitting to leave" when a white car pulled into the alleyway and switched off its lights. Defendant and Grimes returned to their hiding spot behind the houses. Grimes told defendant to "wait for a minute." Grimes then walked to the front of one of the houses, out of defendant's view, and fired a single shot. Defendant and Grimes ran back to the car, at which point Grimes told defendant that he thought "he merked someone," which defendant interpreted to mean that Grimes had shot someone. Defendant and Grimes got into the car with Boyd and Turner, and the group fled the scene.

¶ 12        A day or two later, when it became apparent that defendant, Grimes, Boyd, and Turner were under investigation, defendant agreed to help Grimes get rid of the rifle. Defendant and Grimes took the rifle to a bridge over the Sangamon River, and defendant threw it into the water. Grimes told defendant to "stick to the script," which defendant interpreted to mean that he should not say anything to anyone about the shooting. Upon being interviewed by detectives, defendant initially denied any involvement in the shooting of Maclin. However, defendant later confessed to his involvement in the crime.

¶ 13        Defendant was tried twice on these charges. At defendant's first trial, in June 2008, a jury convicted defendant of (1) first degree murder, (2) unlawful possession of a weapon by a felon,

and (3) aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2006)). In February 2010, this court reversed defendant's convictions and remanded for a new trial, concluding that the trial court erred by allowing the State to read Grimes's testimony from his own trial to the jury after Grimes refused to testify at defendant's trial. *People v. Phillips*, Nos. 4-08-0556, 4-09-0260 cons. (Feb. 1, 2010) (unpublished order under Supreme Court Rule 23).

¶ 14 In May 2012, on remand, the case proceeded to a bench trial at which Grimes testified and defendant's testimony from his June 2008 trial was admitted into evidence. The trial court found defendant guilty of first degree murder and unlawful possession of a weapon by a felon. In July 2012, the court sentenced defendant as stated.

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 Defendant argues that the State failed to prove him guilty of first degree murder beyond a reasonable doubt because (1) Grimes's shooting of Maclin was an independent act not done in furtherance of the original plan, (2) defendant had withdrawn from the original plan, and (3) defendant did not share Grimes's intent.

¶ 18 A. Standard of Review

¶ 19 When reviewing a defendant's challenge to the sufficiency of the evidence, we determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 322 (2011). "This means that we 'must allow all reasonable inferences from the record in favor of the prosecution.' " *Id.* at 8, 944 N.E.2d at 333 (quoting *People v. Cunningham*, 212 Ill. 2d 274, 280, 818 N.E.2d 304, 308 (2004)). "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267-68 (2005).

¶ 20 B. Legal Accountability and the Common-Design Rule

¶ 21 Section 5-2(c) of the Criminal Code of 1961 (Code) (720 ILCS 5/5-2(c) (West 2006)) provides, in pertinent part, as follows:

"A person is legally accountable for the conduct of another when:

* * *

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

¶ 22 In the recent case of *People v. Fernandez*, 2014 IL 115527, ¶ 13, 6 N.E.3d 145, the supreme court reaffirmed "that the underlying intent of [section 5-2(c) of the Code] is to incorporate the principle of the common-design rule." The court explained that "[u]nder the common-design rule, if 'two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts.' " *Id.* (quoting *In re W.C.*, 167 Ill. 2d 307,

337, 657 N.E.2d 908, 923-24 (1995)). " 'Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another.' " *Id*. (quoting *W.C.*, 167 Ill. 2d at 338, 657 N.E.2d at 924).

¶ 23    In *Fernandez*, the defendant agreed to drive his friend, Gonzalez, to a parking lot so that Gonzalez could burglarize some cars. *Id.* ¶ 8, 6 N.E.3d 145. While the defendant waited in the sports utility vehicle (SUV) he was driving, an off-duty police officer noticed Gonzalez breaking into a parked car. *Id.* ¶ 3, 6 N.E.3d 145. The officer displayed his badge and identified himself. *Id*. Gonzalez began walking backward toward the SUV, while the defendant slowly drove forward to Gonzalez. *Id*. Gonzalez then opened the passenger-side door, jumped onto the running board, drew a gun, and fired three shots toward the officer. *Id*.

¶ 24    The *Fernandez* court affirmed the defendant's conviction for aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2008)). *Fernandez*, 2014 IL 115527, ¶ 23, 6 N.E.3d 145. In so doing, the court explicitly rejected the defendant's argument that his conviction must be reversed because "the State failed to produce any evidence showing that defendant even knew Gonzalez had a gun, let alone that he knew that Gonzalez would discharge that gun in the direction of a police officer." *Id*. ¶ 12, 6 N.E.3d 145. The *Fernandez* court noted that this argument was "utterly precluded" by the court's earlier decision in *People v. Kessler*, 57 Ill. 2d 493, 315 N.E.2d 29 (1974). *Fernandez*, 2014 IL 115527, ¶ 19, 6 N.E.3d 145.

¶ 25    In *Kessler*–which involved a "textbook application of the common-design rule" (*id*. ¶ 14, 6 N.E.3d 145)–the defendant and two other men planned to burglarize a tavern after hours. *Kessler*, 57 Ill. 2d at 494, 315 N.E.2d at 30. The defendant waited in the passenger seat of a car outside the tavern while his two unarmed companions went inside. *Id*. at 494, 315 N.E.2d at 31. Inside, the two men were surprised by the tavern owner. *Id*. at 495, 315 N.E.2d at 31. Using a gun found during the burglary, one of the men shot the tavern owner. *Id*. The two men returned to the car that the defendant was waiting in, and the three men sped away. *Id*. An ensuing police chase ended when the car was forced off the road. The defendant stayed in the car while the two other men fled on foot. *Id*. During the foot chase, one of the men shot at a pursuing police officer. *Id*. The defendant was found guilty by accountability of burglary and attempted murder of both the tavern owner and the police officer. *Id*. at 493-94, 315 N.E.2d at 30.

¶ 26    The *Kessler* court affirmed the defendant's convictions under the common-design rule, concluding that "[section 5-2(c) of the Code], as it reads, means that where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word 'conduct' encompasses any criminal act done in furtherance of the planned and intended act." *Id.* at 497, 315 N.E.2d at 32. The *Fernandez* court summarized the *Kessler* court's reasoning: "[O]nce [the defendant in *Kessler*] agreed to participate in burglary, he was liable under section 5-2(c) for every criminal act committed 'in connection therewith,' including the unplanned shootings committed by his initially unarmed companions." *Fernandez*, 2014 IL 115527, ¶ 16, 6 N.E.3d 145.

¶ 27    In *Fernandez*, the court concluded that the State was "exactly right" in arguing that the defendant, " 'by conceding his guilt for the burglary, *** has effectively conceded his guilt for aggravated discharge of a firearm.' " *Id.* ¶ 18, 6 N.E.3d 145. Citing *Kessler*, the court reasoned that defendant's concession that he aided Gonzalez in the planning and commission of the

burglary meant that he was also liable for Gonzalez shooting at the officer–a criminal act committed in furtherance of the burglary. "In other words, there is no question that one can be held accountable for a crime other than the one that was planned or intended, provided it was committed in furtherance of the crime that *was* planned or intended." (Emphasis in original.) *Id.* ¶ 19, 6 N.E.3d 145.

¶ 28                    C. The State Proved Defendant Guilty
                            Beyond a Reasonable Doubt

¶ 29    Applying the common-design rule to the facts of this case, we conclude that the State proved defendant guilty of first degree murder beyond a reasonable doubt.

¶ 30                        1. *Common Criminal Design*

¶ 31    Defendant and Grimes both went to the area of Marietta and Vandyke Streets intending to commit a crime. Specifically, defendant would attack Frazier, and Grimes would be his backup.

¶ 32    The facts of *People v. Tarver*, 381 Ill. 411, 45 N.E.2d 630 (1942), are similar to the facts of this case. *Tarver* involved two feuding groups of young people: the Tarver group and the Walker group. *Id.* at 412, 45 N.E.2d at 631. After a member of the Tarver group, Glenn, got into a fight with a member of the Walker group, Smiley, eight members of the Tarver group agreed to ride together in a truck to confront the Walker group on a street corner. *Id.* at 413, 45 N.E.2d at 631. Mack, a member of the Tarver group, agreed to come along if he was promised there would be no shooting. *Id.* at 412, 45 N.E.2d at 631. Despite this supposed limitation, Mack and another member of the Tarver group brought guns. *Id*. When the two groups confronted each other on the street corner, Tarver took Mack's gun and fatally shot Walker. *Id*. at 413, 45 N.E.2d at 631. Mack and several other members of the Tarver group were convicted of murder on a theory of accountability. *Id*. at 412, 45 N.E.2d at 630.

¶ 33    The supreme court affirmed the convictions, explaining as follows:

   "The evidence abundantly supports the conclusion that the Tarver [group] were banded together for the purpose of avenging the beating that Rotell Glenn had previously received. Frequent reference is made in defendants' brief to the 'peace mission' in which the defendants were engaged[,] and it is argued they came to the neighborhood where the Walker group resided for the purpose of establishing peace between the two groups. The preparation made in equipping themselves with a revolver and a sawed-off rifle, both of which were loaded, exposes the fallacy of the 'peace mission' argument. Perhaps they had no definite intention to use the guns or to kill Lacey Walker or any other person, yet the evidence shows that they went into the neighborhood where the Walker group resided anticipating a fight. It is evident there was ill feeling between the two groups, engendered in part at least by the Smiley-Rotell Glenn affair. It is conceded that for several hours preceding the trip to the Walker neighborhood, the defendants discussed the Smiley-Glenn fight among themselves and the evidence supports the conclusion that they armed themselves before going to the other neighborhood for the purpose of securing a measure of retaliation against the other group. The defendants, whose case is before this court, constituted themselves

members of a gang assembled for the purpose of disturbing the peace and doing unlawful acts.

*** A shot fired by one of the defendants, under the circumstances shown, was a shot fired by all and all of them must answer for the result." *Id.* at 415-16, 45 N.E.2d at 632.

¶ 34    In this case, as in *Tarver*, defendant cannot escape liability merely because his criminal intentions did not rise to the level of murder. By attaching himself to a group bent on illegal acts, defendant became accountable for all the crimes of his companions, including the shooting of Maclin.

¶ 35                                                                    2. *Withdrawal*

¶ 36    Defendant further argues that he was not guilty under the common-design rule because he had withdrawn from the original plan. We disagree.

¶ 37    Section 5-2(c)(3) of the Code provides that a person is not legally accountable for the conduct of another if, "[b]efore the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense." 720 ILCS 5/5-2(c)(3) (West 2006). The supreme court has elaborated on the concept of withdrawal, as follows:

"[T]he withdrawal must be timely, that is to say it must be such as to give his co-conspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act is committed, and it must be possible for the trier of fact to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed." (Internal quotation marks omitted.) *People v. Brown*, 26 Ill. 2d 308, 312-13, 186 N.E.2d 321, 324 (1962).

¶ 38    In support of his argument that he withdrew from the plan, defendant cites his trial testimony:

"[DEFENDANT]: Grimes proceeded in front of the house after about five minutes of sitting back there and he told me to wait. I was fitting to leave when we got ready–when the car lights pulled off I told him I was fitting to leave. He told me for [*sic*] wait for minute and he went around the corner and that's when I heard a shot."

Grimes testified that defendant said, "we might as well not even go up there because we might end up getting jumped real bad." (We note that the trial court, in announcing its verdict, stated that it found Grimes's testimony "unreliable.") According to Grimes, defendant then started walking back to the car, but he complied with Grimes's request that he wait.

¶ 39    This evidence falls woefully short of demonstrating that defendant withdrew from the criminal plan. Defendant's walking back to the car hardly served to detach himself from the criminal enterprise, and even that minimal step was negated when he complied with Grimes's request that he stay.

¶ 40    In *People v. Perez*, 189 Ill. 2d 254, 267, 725 N.E.2d 1258, 1265 (2000), the court held that "[p]roof that the defendant was present during the perpetration of the offense, that he fled from the scene, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining the defendant's legal accountability." Each of those factors applies in this case to demonstrate that defendant did not withdraw from the plan. Even if defendant had partially and momentarily backed out of the criminal effort, he fully recommitted after Grimes asked him to stay. Defendant then fled the scene with Grimes, failed to report the crime, coordinated with Grimes to mislead investigators, and even took it upon himself to dispose of the murder weapon. Defendant by no means "wholly and effectively detached himself from the criminal enterprise." (Internal quotation marks omitted.) *Brown*, 26 Ill. 2d at 313, 186 N.E.2d at 324. Given defendant's actions before and after the murder, a rational trier of fact could have easily concluded that defendant did not withdraw from the common criminal design so as to negate his legal accountability.

¶ 41                    3. *The Claimed "Shared Intent" Requirement*
                            *of the Common-Design Rule*

¶ 42    We also reject defendant's argument that he was not proved guilty because he did not share Grimes's intent. Specifically, defendant contends that the State needed to prove that he intended for Grimes to fire the rifle, and because defendant had no such intent, he was not proved guilty of first degree murder. We strongly disagree.

¶ 43    Under the common-design rule, the State need not prove that the defendant and the principal shared the same intent vis-à-vis the charged crime. Instead, as this court has held, "the State need only prove the accused had the specific intent to promote or facilitate *a* crime. Once the State proves the accused intended to promote or facilitate *a* crime, it has established the accused's responsibility for *any* criminal act done in furtherance of the intended crime." (Emphases in original.) *People v. Houston*, 258 Ill. App. 3d 364, 369, 629 N.E.2d 774, 779 (1994).

¶ 44    In *Fernandez*, the defendant claimed that he could not be found guilty by accountability because he did not even know that Gonzalez had a gun, much less that he would use it to shoot at a police officer. *Fernandez*, 2014 IL 115527, ¶ 12, 6 N.E.3d 145. In rejecting that argument, the court stated "there is no question that one can be held accountable for a crime other than the one that was planned or intended, provided it was committed in furtherance of the crime that *was* planned or intended." (Emphasis in original.) *Id.* ¶ 19, 6 N.E.3d 145. In this case, even though defendant knew Grimes had a loaded rifle, such knowledge was not necessary to establish defendant's guilt for first degree murder. Even if Grimes had hidden the rifle from defendant, or found the rifle on the ground after he stepped outside defendant's view, defendant would still be guilty of first degree murder. By setting out to commit a crime with Grimes, defendant rendered himself legally accountable for Grimes's shooting of Maclin.

¶ 45    Like the felony-murder doctrine, under which a defendant may be liable for first degree murder even when his cofelon is killed by a police officer (*People v. Hudson*, 222 Ill. 2d 392, 856 N.E.2d 1078 (2006)) or when a resisting victim accidentally kills an innocent bystander (*People v. Lowery*, 178 Ill. 2d 462, 687 N.E.2d 973 (1997)), the common-design rule provides harsh medicine for those who willingly join with others to engage in criminal acts. Just as the

felony-murder doctrine "seeks to deter persons from committing forcible felonies by holding them responsible for murder if a death results," the common-design rule "seeks to deter persons from intentionally aiding or encouraging the commission of offenses." *People v. Dennis*, 181 Ill. 2d 87, 105, 692 N.E.2d 325, 335 (1998).

¶ 46　　　Defendant's argument that the State was required to prove that he shared Grimes's intent to fire the rifle illustrates the erroneous conflation of two distinct bases for proving legal accountability: (1) shared intent (sometimes referred to as "specific intent") and (2) common design. As the supreme court explained in *Fernandez*, "it is well settled that, under the Illinois accountability statute, the State may prove a defendant's intent to promote or facilitate an offense by showing *either* (1) that the defendant shared the criminal intent of the principal, *or* (2) that there was a common criminal design." (Emphases in original.) *Fernandez*, 2014 IL 115527, ¶ 21, 6 N.E.3d 145. In other words, accountability cases fall into two distinct categories: (1) shared-intent cases and (2) common-design cases. *Id.*

¶ 47　　　In two shared-intent cases discussed by the *Fernandez* court–*Dennis*, 181 Ill. 2d 87, 692 N.E.2d 325, and *People v. Taylor*, 186 Ill. 2d 439, 712 N.E.2d 326 (1999)–"the defendant was the driver of a car whose passenger, *wholly unbeknownst to the defendant*, intended to commit a crime." (Emphasis in original.) *Fernandez*, 2014 IL 115527, ¶ 20, 6 N.E.3d 145. The *Fernandez* court cited *Dennis* and *Taylor* to explain the distinction between the shared-intent analysis and the common-design analysis:

　　　"In both [*Dennis* and *Taylor*], the evidence clearly showed that the defendants had no idea that *any crime* was going to be committed, let alone the one that actually was committed. [Citations.] Thus, in these two cases, the court appropriately focused upon what these defendants knew about their passengers' criminal intentions, as one cannot share an intent to promote or facilitate the commission of a crime when one doesn't even know that a crime is going to be committed. However, this emphatically is *not* the rule in common-design[-]rule cases, where by definition the defendant intentionally sets out to promote or facilitate the commission of a crime. In common-design[-]rule cases, the rule is and remains that of *Kessler*, namely, that 'where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word "conduct" encompasses any criminal act done in furtherance of the planned and intended act.' " (Emphases in original.) *Id.* ¶ 21, 6 N.E.3d 145 (quoting *Kessler*, 57 Ill. 2d at 497, 315 N.E.2d at 32).

¶ 48　　　In keeping with this holding, the *Fernandez* court explicitly overruled the First District's decision in *People v. Phillips*, 2012 IL App (1st) 101923, ¶ 22, 972 N.E.2d 724, which essentially held that in *all* accountability cases, a defendant is legally accountable only for crimes that he specifically intends to help his cohort commit. *Phillips*, 2012 IL App (1st) 101923, ¶ 15, 972 N.E.2d 724, *overruled by Fernandez*, 2014 IL 115527, ¶ 19, 6 N.E.3d 145. The First District's holding in *Phillips* mirrors the argument defendant makes in the case before us, and that holding essentially constituted an attempt to resurrect the rule rejected by the supreme court in *Kessler*. The unanimous supreme court in *Fernandez* flatly rejected the *Phillips* court's interpretation of the accountability statute and made clear that shared intent is *not* an element of the common-design rule. Instead, shared intent and common design are two separate bases upon which the State can prove legal accountability. *Fernandez*, 2014 IL 115527, ¶ 21, 6 N.E.3d 145.

¶ 49     The First District's December 2013 decisions in *People v. Johnson*, 2013 IL App (1st) 122459, 3 N.E.3d 477, and *People v. Williams*, 2013 IL App (1st) 112693, 4 N.E.3d 495, both of which cited *Phillips* approvingly and reversed first degree murder convictions, are also premised upon an erroneous interpretation of the accountability statute. As the First District's multiple recent decisions demonstrate, the "shared intent" requirement of the common-design rule seems to be the Rasputin of unsound legal rules. It just won't die.

¶ 50     Over 150 years ago, in *Brennan v. People*, 15 Ill. 511, 516 (1854), the supreme court dealt what should have been a lethal blow to the shared-intent rule, holding that "[i]f several persons conspire to do an unlawful act, and death happens in the prosecution of the common object, all are alike guilty of the homicide. The act of one of them done in furtherance of the original design[ ] is, in consideration of law, the act of all."

¶ 51     In the 1885 case of *Hamilton v. People*, 113 Ill. 34, 36 (1885)–cited in *Kessler*–the defendant was convicted of assault with intent to commit murder on a theory of accountability stemming from a botched watermelon heist. After a farmer and his son discovered three would-be watermelon thieves in their watermelon patch, the farmer tussled with one of the thieves on the ground. Another of the thieves used a pistol to shoot at the farmer, but he missed and shot his companion. The third thief struck the farmer with a hoe, knocking him unconscious. *Id.* at 36-37.

¶ 52     On these facts, all three watermelon thieves were convicted of assault with intent to commit murder. The supreme court stated, as follows:

> "The business upon which the parties had deliberately entered was a hazardous one. They had a right to expect that in the event they were detected in stealing the melons, it would result in violence endangering life or limb, *** as it actually turned out afterwards. That they were all co-conspirators in a dangerous criminal enterprise, is an undisputed fact. Such being the case, whatever was done by one, in contemplation of law was done by all, and all are therefore equally responsible." *Id*. at 37-38.

¶ 53     In the almost 130 years since *Hamilton*, the supreme court has repeatedly rejected shared intent as an element of the common-design rule. See, *e.g.*, *People v. Rudecki*, 309 Ill. 125, 129, 140 N.E. 832, 833 (1923); *Tarver*, 381 Ill. at 416, 45 N.E.2d at 632; *People v. Rybka*, 16 Ill. 2d 394, 405, 158 N.E.2d 17, 22 (1959); *People v. Torres*, 19 Ill. 2d 497, 499, 167 N.E.2d 412, 413 (1960); *People v. Washington*, 26 Ill. 2d 207, 209, 186 N.E.2d 259, 261 (1962); *People v. Cole*, 30 Ill. 2d 375, 379, 196 N.E.2d 691, 694 (1964); *People v. Armstrong*, 41 Ill. 2d 390, 399, 243 N.E.2d 825, 830 (1968); *People v. Hubbard*, 55 Ill. 2d 142, 147-48, 302 N.E.2d 609, 612 (1973); *Kessler*, 57 Ill. 2d at 497, 315 N.E.2d at 32; *People v. Terry*, 99 Ill. 2d 508, 514, 460 N.E.2d 746, 749 (1984); *W.C.*, 167 Ill. 2d at 337, 657 N.E.2d at 923-24; *Perez*, 189 Ill. 2d at 267, 725 N.E.2d at 1265; *People v. Cooper*, 194 Ill. 2d 419, 435, 743 N.E.2d 32, 42 (2000).

¶ 54     The shared-intent requirement of the common-design rule is as resilient as it is unsound. Its ability to maintain a foothold in Illinois jurisprudence despite 160 years of rejection by the supreme court reminds us of the defunct evidentiary doctrine of *res gestae*. Justice Greiman drew the appropriate analogy:

> "Like an entombed vampire, every now and again 'Count *Res Gestae*' moves the cover of his coffin and begins to circulate in the world of litigators and judges ***. ***

\* \* \*

I would hope that this concurring opinion can be the equivalent of a stake in the heart of *res gestae* and that the coffin lid may be securely fastened." *People v. Rogers*, 264 Ill. App. 3d 740, 752-53, 636 N.E.2d 565, 574 (1992) (Greiman, P.J., specially concurring).

Like *res gestae*, the shared-intent requirement of the common-design rule has shown an uncanny ability to come back from the dead. Even though the past 160 years of supreme court precedent have failed to decisively kill the bogus shared-intent requirement of the common-design rule, we are hopeful that *Fernandez* has finally finished the job. We hope that this opinion will serve as an additional nail in the coffin.

¶ 55                                    III. CONCLUSION

¶ 56        For the reasons stated, we affirm defendant's convictions. As part of our judgment, we award the State its $50 statutory assessment as costs of this appeal.

¶ 57        Affirmed.