NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220029-U

NO. 4-22-0029

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 29, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRUCE MELVIN, | ) | No. 19CF9 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant failed to establish that he received ineffective assistance of counsel.

¶ 2     Following a bench trial, the trial court found defendant, Bruce Melvin, guilty of both unlawful possession with intent to deliver a controlled substance (720 ILCS 570/401(a)(1)(A) (West 2018)) and unlawful possession of a controlled substance (*id.* § 402(a)(1)(A)). It later sentenced him to 10 years in prison. Defendant appeals, arguing he received ineffective assistance of counsel because his trial attorney failed to move for a directed finding in his favor at the close of the State's case-in-chief. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4     In January 2019, the State charged defendant with the two drug-related offenses at issue. *Id.* § 401(a)(1)(A), 402(a)(1)(A). It specifically alleged that on October 5, 2016, defendant

knowingly possessed with the intent to deliver more than 15 grams of a substance containing heroin.

¶ 5        Defendant's bench trial was conducted on two separate days in January and April 2021. The State's evidence showed that on October 5, 2016, police officers with the Livingston County proactive drug unit investigated a tip about a group of individuals in a silver Cadillac traveling to Livingston County from Chicago. Officers observed the vehicle and stopped it for speeding. Three people were inside the vehicle at the time of the stop: Kelly Dougherty, who was driving the vehicle; Rob Simpson, the front seat passenger; and defendant, the backseat passenger and owner of the vehicle.

¶ 6        Brian Maier, a police officer with the Dwight Police Department and a member of the proactive drug unit, testified he initiated the traffic stop of the Cadillac. During the stop, he learned Dougherty's driver's license was suspended. As a result, Dougherty was arrested, and a search of her person was conducted. The State's evidence showed officers found a large amount of suspected heroin "in her pant leg tucked into a sock area." Maier testified there were "four bundles [of suspected heroin] made into one big bundle." After all of the bundles were unraveled, there were 94 smaller "individual baggies" of suspected heroin. The parties stipulated that the substances inside 70 of the "individual baggies" were tested, the tested substances were found to contain heroin, and the total weight of the tested substances was 15.6 grams. The "individual baggies" that were not analyzed weighed 9.6 grams.

¶ 7        Maier further testified that the traffic stop was recorded by a camera on his squad car. The recording was admitted into evidence and showed defendant initially denied knowing anything about the heroin discovered on Dougherty's person. Later, he acknowledged that the group went to Chicago and bought drugs. He asserted Simpson had a lot of money and that only

Simpson's money was used for the purchase. The recording also showed that Simpson initially told the police that the group had been to Chicago to visit Dougherty's son. Ultimately, however, he admitted that the group went to Chicago "to buy dope." He asserted that he put up $200 for the purchase and that they used "everybody's money."

¶ 8          Leland Brooke, a deputy with the Livingston County Sheriff's Department, testified he was present at the traffic stop and spoke with defendant. According to Brooke, defendant reported "he was supposed to get a couple of bags of heroin from *** Simpson for driving him to Chicago." Brooke stated he also took a written statement from defendant. The statement was admitted into evidence, and stated as follows:

"I [defendant] went to Chicago with a [woman] named Kelly and Rob Simpson[.] [T]hey drove my car to purchase heroin. [O]n Cicero at Popeyes they met a dealer then drove around the block in an alley where a young black girl got out of an [*sic*] vehicle with a black guy and brought $650 worth of heroin[.] [T]hey handed it to Kelly[.] Rob was driving [and] then we left Chicago. Then we were pulled over by Dwight Police."

¶ 9          On cross-examination, Brooke testified the tip the drug unit received was from defendant's wife. He stated he had personal contact with defendant's wife and through their conversations, Brooke learned defendant was a heroin user. Brooke further testified that at the scene of the traffic stop, defendant reported that he needed "to get into a rehab facility." Brooke agreed that defendant appeared "pretty calm and collected," and asserted he would have noticed if defendant was "undergoing withdrawals."

¶ 10          At the close of the State's case, defendant's attorney made no motions. In his case-in-chief, defendant testified on his own behalf. He admitted having a 2015 conviction for a

drug-related offense and described the events that occurred on October 5, 2016. Defendant asserted that on the morning of October 5, Simpson and Dougherty called him because they "wanted a ride." He asserted that at the time, he was heavily using drugs, including heroin. On the day at issue, he was "ill" and going though withdrawals due to his drug use. Defendant testified he allowed Simpson and Dougherty to use his vehicle. He maintained he took the trip with them because he "was just trying not to be physically ill," and he denied that he was trying to acquire "a large amount of drugs."

¶ 11    Defendant testified he was aware that heroin was purchased while the group was in Chicago. He recalled that the purchase occurred in an alley by a Wendy's restaurant and that the heroin was given to Dougherty. Defendant asserted he did not know the quantity of drugs that were purchased or how much money was exchanged. He denied that any of the money used to purchase the heroin was his.

¶ 12    Defendant asserted that after the heroin was purchased, he gave Simpson $50 in exchange for "a few bags of heroin." He used the heroin in the backseat of the car and testified it made him feel "normal" and no longer "ill." Defendant asserted he did not know where the remaining drugs were located. Also, he asserted he did not know what Simpson and Dougherty intended to do with the drugs, stating he did not know them well and "didn't hang out with them." Defendant testified he simply "knew somebody they knew," specifically a man named "John-John" who "was selling for [Simpson]." Defendant further testified as follows: "[Simpson] sold me a few bags. They asked to use my vehicle. That's how I got in this mess[.]"

¶ 13    On cross-examination, defendant denied that there had been a "bargain," whereby he agreed to the use of his vehicle in exchange for bags of heroin. He asserted he allowed Simpson and Dougherty the use of his vehicle and he rode with them to Chicago because he "wanted the

drugs."

¶ 14　　　　During the State's closing argument, the prosecutor argued defendant's claim that he was unaware of the purpose of the trip was inconsistent with the evidence. He asserted defendant's "role was that of an accomplice" and that he was "an integral part" of what occurred. Defendant's counsel argued defendant lacked knowledge of what Simpson and Dougherty were "doing or going to do" and, instead, "just wanted to put himself closer to the drugs as quickly as possible" so that he could obtain heroin for himself. In rebuttal, and in response to defense counsel's argument, the prosecutor pointed to defendant's testimony that he knew Simpson "was a dealer."

¶ 15　　　　Ultimately, the trial court found defendant guilty of both charged offenses. In setting forth its ruling, the court found it was undisputed that defendant knew his vehicle was being used "to go to Chicago to buy drugs." The court stated it did not find defendant's testimony was "particularly credible" and noted that, in this written statement, defendant suggested that $650 was spent to purchase the heroin. The court also stated as follows: "[B]ased on this amount that I'm looking at right here, surely that wasn't going to be used in one drive on the way back from Chicago with three people in the car. So he knew what was going on."

¶ 16　　　　Following defendant's bench trial, the trial court permitted defendant's counsel to withdraw from the case and appointed new counsel. In October and November 2021, defendant, with the aid of his new counsel, filed a posttrial motion, and an amended posttrial motion, for a new trial. He challenged the sufficiency of the evidence against him and argued his trial attorney was ineffective for failing to properly prepare him for his testimony, challenge the admissibility of evidence, seek retesting of the drug evidence, review discovery and discuss trial strategy with him, or call witnesses to testify on his behalf.

¶ 17　　　　In November 2021, the trial court denied defendant's posttrial motion. Regarding defendant's sufficiency of the evidence claim, it stated as follows: "There is sufficient evidence I believe to show on the theory of accountability and constructive possession that the [d]efendant, in fact, was an integral part of the decision that day to drive to Chicago, pick up these drugs that were going to be redistributed within the community."

¶ 18　　　　At defendant's sentencing, the trial court entered a judgment of conviction on count I, possession of a controlled substance with intent to deliver, finding the simple possession count merged with that offense. It then sentenced defendant to 10 years in prison. Defendant filed a motion to reconsider his sentence, which the court also denied.

¶ 19　　　　This appeal followed.

¶ 20　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 21　　　　On appeal, defendant argues both his trial counsel and his posttrial counsel provided ineffective assistance. Specifically, he contends the State's evidence presented in its case-in-chief was insufficient to prove him guilty of possessing heroin with the intent to deliver because, from that evidence, a reasonable fact finder could not "conclude that he was accountable for his codefendant's intent to deliver the heroin." Defendant maintains the only evidence that would support a finding of his guilt "came from [his] own testimony that he knew [Simpson] was a drug dealer." Defendant argues his trial counsel should have moved for a directed finding of not guilty at the close of the State's evidence and before he took the stand in his own defense because such a motion would have been granted. He also contends his posttrial counsel was ineffective for failing to argue during posttrial proceedings the ineffectiveness of his trial counsel for failing to move for a directed finding. Defendant asks that we vacate his conviction for the unlawful possession of heroin with the intent to deliver and remand the matter for resentencing on the

remaining count of simple possession.

¶ 22    Ineffective-assistance-of-counsel claims are evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hatter*, 2021 IL 125981, ¶ 25, 183 N.E.3d 136. Under that test, "a defendant must show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90, 162 N.E.3d 223. A defendant's failure to establish either *Strickland* prong is fatal to his claim. *Id.* For the reasons that follow, we find defendant cannot establish *Strickland's* prejudice prong and, as a result, his ineffective-assistance claim lacks merit.

¶ 23    Section 115-4(k) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4(k) (West 2018)) provides for directed findings or verdicts as follows:

> "When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant."

"A motion for a directed verdict asserts only that as a matter of law the evidence is insufficient to support a finding or verdict of guilty." *People v. Withers*, 87 Ill. 2d 224, 230, 429 N.E.2d 853, 856 (1981). "The standard to be used in deciding whether to direct a verdict is 'whether a reasonable mind could fairly conclude the guilt of the accused beyond reasonable doubt, considering the evidence most strongly in the People's favor.' " *People v. Hendricks*, 137 Ill. 2d 31, 63, 560 N.E.2d 611, 625 (1990) (quoting *Withers*, 87 Ill. 2d at 230); see also *People v. Shakirov*, 2017 IL App

(4th) 140578, ¶ 81, 74 N.E.3d 1157 ("A directed verdict *** is appropriate when a trial court concludes, after viewing all of the evidence in a light most favorable to the State, that no reasonable juror could find that the State had met its burden of proving the defendant guilty beyond a reasonable doubt.").

¶ 24        Here, defendant was charged with unlawfully possessing, and possessing with the intent to deliver, in excess of 15 grams of a substance containing heroin. 720 ILCS 570/401(a)(1)(A), 402(a)(1)(A) (West 2018). On appeal, he challenges only the sufficiency of the State's evidence as it relates to the charge of unlawful possession with the intent to deliver. To sustain a conviction for that offense, "the State must prove beyond a reasonable doubt (1) the defendant had knowledge of the presence of the controlled substance; (2) the controlled substance was in the immediate possession or control of the defendant; and (3) the defendant intended to deliver the controlled substance." *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 64, 55 N.E.3d 117. "Because direct evidence of intent to deliver is rare, such intent must usually be proven by circumstantial evidence." *People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E.2d 1020, 1026 (1995). Factors that are probative of whether there is the intent to deliver a controlled substance include whether the quantity of the controlled substance at issue is too large to be viewed as being for personal consumption and the manner in which the substance is packaged. *Id.*

¶ 25        Additionally, "[i]t is proper to charge a defendant as a principal even though the proof is that the defendant was only an accomplice." *People v. Ceja*, 204 Ill. 2d 332, 361, 789 N.E.2d 1228, 1247 (2003). "A defendant charged as a principal can be convicted on a theory of accountability if supported by the evidence." *Id.* A person may be held legally accountable for the conduct of another when "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid

- 8 -

that other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2018).

¶ 26     "[T]o prove that a defendant possessed the intent to promote or facilitate the crime, the State may present evidence that either (1) the defendant shared the criminal intent of the principal, or (2) there was a common criminal design." *People v. Fernandez*, 2014 IL 115527, ¶ 13, 6 N.E.3d 145. "Under the common-design rule, the State need not prove that the defendant and the principal shared the same intent *vis-à-vis* the charged crime." *People v. Phillips*, 2014 IL App (4th) 120695, ¶ 43, 14 N.E.3d 1. Rather, "the State need only prove the accused had the specific intent to promote or facilitate *a* crime." (Internal quotation marks omitted and emphasis in original.) *Id.*

> "Under the common-design rule, if two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts. [Citation.] Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another." (Internal quotation marks omitted.) *Fernandez*, 2014 IL 115527, ¶ 13.

¶ 27     On appeal, defendant concedes that the State's evidence was sufficient to prove him guilty of possessing the heroin at issue based on the theory of accountability, in that the heroin was possessed by Simpson and Daugherty and he aided them in the commission of that offense. He asserts however, that the evidence was insufficient to prove he had the intent to deliver the heroin either as the principal of the crime or based on the theory that he was accountable for his codefendants' criminal conduct. Defendant argues the evidence established that his own purpose

for being involved in the trip to Chicago was to obtain heroin for his own personal use. Further, he contends he cannot be held accountable for any intent to deliver by his codefendants because "[n]o evidence in the State's case indicated that [he] knew that Simpson was a drug dealer." (Emphasis omitted.) According to defendant, "[t]he lack of evidence that [he] knew Simpson or Dougher[t]y was a heroin dealer should have been fatal to the State's case."

¶ 28        Here, we disagree with defendant and find the State's evidence was sufficient to establish his guilt based on a theory of accountability. In particular, its evidence was sufficient to find defendant accountable for his codefendants' conduct under the common-design rule. In a common-design case, "even if a defendant is *completely unaware* of his codefendant's true intentions, he is still legally accountable for any crimes committed by the group to which the defendant had attached himself, knowing that the group was bent on illegal acts." (Emphasis in original.) *People v. Jackson*, 2020 IL App (4th) 170036, ¶ 45, 165 N.E.3d 523. Having knowledge of a group's design "means only that a person who attached himself to a group knew that the group intended to engage in criminal behavior of some kind" and "nothing more specific is required." *Id.* ¶ 49. "[A]ll that is required for a defendant to be legally accountable in a common-design case is for the evidence to show that (1) the group was intending to engage in some form of criminal behavior and (2) the defendant was aware of the group's intentions." *Id.* In this case, for defendant to be held accountable for Simpson and Dougherty's possession of heroin with intent to deliver, he did not have to be aware that either individual was dealing drugs or that either had the intent to deliver the heroin the group obtained.

¶ 29        Ultimately, the State's evidence showed defendant agreed to lend his vehicle to Simpson and Dougherty and travel with them to Chicago with knowledge that they intended to obtain and possess heroin. The group purchased over 15 grams of heroin, which, when discovered

by the police, was packaged in 94 "individual baggies." We note defendant argues the quantity of drugs was not so large that the drugs could not have been personally consumed by Simpson and Dougherty "over a period of weeks." However, when viewing the evidence in the light most favorable to the State—as must be done when the defendant requests a directed finding in his favor—the State's evidence as to the weight and packaging of the heroin could create a reasonable inference of an intent to deliver. Additionally, because the evidence showed defendant voluntarily aided his codefendants with knowledge that they "intended to engage in criminal behavior of some kind" *(id.* ¶ 49), the State's evidence was also sufficient to support a finding that defendant was legally accountable for his codefendants' commission of the offense at issue.

¶ 30　　　　In this instance, defendant cannot establish that either his trial attorney or his posttrial attorney was ineffective. "Defense counsel is not required to make losing motions or objections in order to provide effective legal assistance." *People v. Moore*, 2012 IL App (1st) 100857, ¶ 45, 964 N.E.2d 1276. For the reasons discussed, defendant cannot establish that a motion for a directed finding at the close of the State's case would have been successful. Accordingly, he cannot establish that he was prejudiced by the alleged deficient performance of either his trial or posttrial counsel.

¶ 31　　　　　　　　　　　　III. CONCLUSION

¶ 32　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 33　　　　Affirmed.