The People of the State of Illinois, Plaintiff-Appellee, v. Frank T. Carpenter, Defendant-Appellant.

Gen. No. 51,055.

First District, Fourth Division.

May 20, 1966.

Jack M. Levin, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. James Gildea, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

The defendant, Frank T. Carpenter, was found guilty of robbery after a bench trial and was sentenced to the penitentiary for a term of not less than two nor more than five years. Defendant appealed directly to the Supreme Court and urged (1) that the element of force or intimidation was not proven beyond a reasonable doubt; (2) that the testimony of the identifying witnesses was in conflict and therefore the defendant was not identified beyond a reasonable doubt; and (3) that he was placed in a lineup from which he was identified without being represented by counsel prior thereto, and therefore he was deprived of due process. The Supreme Court transferred this case to the Appellate Court and stated that:

> The defendant contends that the evidence was insufficient to establish his guilt, which clearly presents no constitutional issue. It is also charged that the defendant was not advised of his right to counsel before he was placed in the police lineup where he was identified. It is not contended that the defendant requested counsel prior to the lineup. Evidence as to the identification at the lineup was not objected to in the trial court. We are of the opinion that there is no substantial constitutional question involved and the motion of the defendant in error is allowed and the cause is transferred to the Appellate Court for the First District.

Therefore, only the first two grounds urged by the defendant are before this court.

Rosalie Walker testified and stated that on November 13, 1962, at approximately 1:25 p. m. she was employed by Leader Cleaners in their store located at 5101 South Michigan Avenue in Chicago, Illinois; that she was working in the back of the store but could see the counter; and that:

I was working with Jessie Hanner, a counter clerk. . . . A man walked into the store on November 13, 1962, [at about 1:25 p. m.] and I see the man is in Court [indicating the defendant, Frank T. Carpenter]. He walked in the door and the girl [referring to Jessie Hanner] was waiting on a customer. . . . As soon as she finished with the customer, then she asked him, "May I help you?" . . . The defendant's left side of his face was opposite the left side of the girl's face and after he leaned over to whisper to my co-worker she kept walking to the back. He started—we seen her walking to the back, passed by me. Then he come down the counter a little piece, he says to me, "O.K., lady, this is it." I said, "What?". . . I just walked. Jessie was in the back. He said, "Come on from back there." . . . She started walking behind me. I walked to the cash register. . . . He said, "Put the money in a paper bag." I said, "I don't have no bag." He said, "Bring it to me as it is." . . . He put it [the money] in his pocket. . . . He had on a black three quarter long corduroy jacket and a brown hat. He had a mustache. I didn't see a scar on his face. . . . He was standing to my left side. . . . On November 28, 1962, I attended a lineup at the police station . . . where four or five colored men were in this lineup. I didn't pay any attention to their heights. I saw the man in that lineup that held us up. They were just standing when I walked in. The man was in line when I got there and was third

from the left. . . . When I was standing at the line-up and picked out the defendant, I was able to see a scar on his face. When I walked in, I looked at his face and I knew his face . . . . He was wearing a mustache. He had on a gray hat.

On cross-examination the witness stated that:

He [defendant] said, "The money isn't yours," and I said, "No, sir, it isn't." He never told me to take it out of the cash register, but he said it wasn't mine. He then said, "Put it in a paper bag." I didn't see a gun and I didn't see a knife. He had his hand in his pocket. . . . I looked at his face. I was looking on the side. I didn't see any scar on his face. He was not facing us. He was on the side . . . . He reached over with his left hand. . . .

On redirect examination she testified that:

I gave him the money because I knew it was a stickup. He said that was it. He said, "Lady, come on up here, this is it," and I walked up. He said, "Do as I say and nobody will get hurt." He told me to put the money in a paper bag. When I gave him the money, his right hand was in his right pocket in his trouser pocket. I cannot describe exactly how his hand looked in his pocket. I can't describe it because I was afraid.

Jessie Hanner testified and corroborated the testimony of Rosalie Walker with regard to the aforesaid events in the store but stated that defendant's hand was in his coat pocket. She further testified that after she asked the defendant if she could be of assistance to him that:

He leaned over and whispered, "This is a stickup." He leaned the left side of his face toward me and my right side was closest his.

141

On cross-examination the witness testified that at one time during the alleged robbery the defendant was directly facing both of them from across the counter and that she did not see a scar on his face. She further stated that:

I saw him [defendant] one week before, going west, right in front of the cleaners. It was in the afternoon. . . . I think he had on a black jacket, I am not sure, but I do remember his face. I think it was the same black corduroy jacket. He had a hat on . . . . It took about three minutes to walk past the store. He was walking kind of slow, I guess.

There was a conflict in the testimony of Rosalie Walker and Jessie Hanner as to the description of the customer who was in the store immediately prior to the alleged robbery.

Detective Lucio Bitoy testified that he was present at the aforesaid lineup and that the defendant was identified by Rosalie Walker.

Roger Carpenter, a brother of the defendant, testified that on November 13, 1962, he saw the defendant at home "specifically between the hours of eleven in the morning until four in the afternoon." However, on cross-examination the witness stated that he [Roger] was not at home between 11:00 a. m. and 12:15 p. m.

Defendant's mother testified and stated that she saw him at home on the day in question "specifically between the hours of 11:00 in the morning until about 4:00 in the afternoon." On cross-examination she stated that the defendant was not in her sight during that entire period of time but that he could not have left the house without passing her.

Defendant testified in his own behalf and stated that he was at home "between the hours of 11:00 a. m. and 4:00 p. m." on the day in question and that while he was in the lineup he did not hear Rosalie Walker identify

142

him; that after the lineup Detective Bitoy came to him and said "I got three fingers on you and you are going to the penitentiary"; and that he told the detective that he had not committed any crime.

Defendant testified on redirect examination as to a scar on his face and stated that:

> I have had the scar on my face for about ten years. The scar is at least a minimum of two and one-half inches. It probably might be as long as three inches on the right side of my face along the right cheek bone, about at least an inch below the right eye and an inch below the hair line, on the right side by the ear lobe.

▆▆▆▆ Defendant first argues that the element of force or intimidation was not established since there is nothing in the record to show that the person from whom the money was allegedly taken was intimidated or put in fear. A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force. Illinois Rev Stats, 1961, c 38, § 18–1(a). That requirement is satisified if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and put him "under the temporary suspension of the power of exercising his will through the influence of the terror impressed." Steward v. People, 224 Ill 434, 443, 79 NE 636. Moreover, the property that is taken need not have been owned by the victim, but it is sufficient that the property was in his care or custody. People v. Kubish, 357 Ill 531, 192 NE 543. In the instant case Rosalie Walker testified that the defendant said to her: "This is it"; that he said: "Do as I say and nobody will get hurt"; that he told her to put the money in a bag; that the defendant's hand was in

his pocket; that she gave him the money because she was afraid and she knew it was a stickup.

We find that the evidence establishes beyond a reasonable doubt the requisite element of force or threat of imminent force.

■ Defendant next argues that the identification of the defendant was not proven beyond a reasonable doubt because of minor discrepancies in the testimony of Rosalie Walker and Jessie Hanner with regard to matters wholly unrelated to the identification of the defendant and because both witnesses testified that during the alleged robbery they did not notice an obvious scar on the face of the robber. The witness Walker testified that the defendant was standing to her left, which would expose only the left side of his face, and this is consistent with her additional testimony that he reached for the money with his left hand. Jessie Hanner testified that the defendant was facing her directly. According to defendant's own testimony, however, the scar was on the right side of his face which was not exposed to the witnesses. The trial judge, as the trier of fact, commented with regard to the scar and stated that:

> Well, on the question of the scar, the Court can't see a scar looking at Mr. Carpenter straight on. There was some testimony about a scar and I attempted to see it from the bench and it wasn't until he got on the witness stand and turned his right side to me that I could see this scar. Once you see a scar is there why then it is very evident. But the scar is not particularly a discoloration and it is hard to see. For instance, I can't see—I know there is a scar there now, but I can't see it even on Mr. Carpenter ten or twelve feet away from me. And it isn't until you get a side view that you see this scar.

144

Moreover, there was testimony from which the trier of fact could conclude that the defendant was positively identified from a lineup by Rosalie Walker and in addition the defendant was positively identified in court by both witnesses. In People v. Miller, 30 Ill2d 110, 195 NE2d 694, where two witnesses failed to mention a scar which ran across the bridge of the defendant's nose, the court stated at page 113:

> We feel that the failure of Madison Clark to mention defendant's scar and Edrice's failure to notice it do not create a reasonable doubt of his guilt. Precise accuracy in describing facial characteristics is unnecessary where an identification is positive.

██ ██ Slight discrepancies in the testimony of the witnesses do not render that testimony unworthy of belief. People v. Williams, 28 Ill2d 53, 190 NE2d 796. In a bench trial it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony. People v. Clark, 30 Ill 2d 216, 195 NE2d 631. We will not substitute our judgment for that of the trial judge.

██ We find that the defendant was convicted beyond a reasonable doubt of the crime of robbery. Therefore the judgment of the trial court is affirmed.

Affirmed.

ENGLISH and McCORMICK, JJ., concur.