2025 IL App (1st) 231439-U

No. 1-23-1439

Order filed March 21, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 22 CR 0954701 |
| | ) | 22 CR 0954801 |
| ANGELO BONDS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Neera Walsh, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for robbery over his challenge to the sufficiency
            of the evidence.

¶ 2    Following a bench trial in two joined cases, defendant Angelo Bonds was convicted of

robbery (720 ILCS 5/18-1(a) (West 2020)) and two counts of retail theft (720 ILCS 5/16-25(a)(1)

(West 2020)). The trial court sentenced him to concurrent terms of six, three, and three years'

imprisonment, respectively. On appeal, Bonds challenges the sufficiency of the evidence to sustain

his robbery conviction, arguing the State failed to prove beyond a reasonable doubt that he took property by threatening imminent use of force. For the following reasons, we affirm.

¶ 3    Bonds was charged by indictment with aggravated robbery, robbery, and retail theft for an incident occurring on June 27, 2022, at a Target retail store in Chicago, Illinois (Case No. 22-CR-0954801). Bonds was also charged by a separate indictment with retail theft for an incident occurring on July 23, 2022, from the same store (Case No. 22-CR-0954701). The trial court granted the State's motion for joinder and the matter proceeded to a bench trial.

¶ 4    Roberto Vergara, a security manager at Target, testified that on June 27, 2022, Bonds, whom he identified in court, entered his store. An employee informed Vergara of Bonds's presence. Vergara and his staff "knew" Bonds as he had visited the store "for liquor" so often that Vergara had lost count, but Vergara knew it was "[m]ore than five" times. Vergara surveilled Bonds using the store's security cameras and concurrently ordered an employee to "make [a] presence" in the liquor aisle "to try and deter the theft of liquor." When Bonds was not deterred by the employee standing there and instead continued placing liquor bottles inside of a red luggage bag he brought to the store, Vergara walked to the liquor aisle to "deter" the theft. "None of that worked," and Bonds started leaving the store.

¶ 5    Vergara ordered Bonds twice "to leave the liquor and get out" and advised him that he was trespassing. Bonds then reached into his pocket and retrieved a metal object. He put it in his hand and told Vergara, "[i]f you want your liquor, get closer." Vergara assumed the metal object was a weapon, "most likely a knife." Vergara feared for his safety and so "disengaged" from Bonds and ordered his employee to do the same. Bonds then left the store with the bottles of liquor, valued at $263, without paying.

¶ 6      When Bonds pulled the metal object from his pocket, Vergara believed it was a weapon and "assumed it was a knife" because of Bonds's "intentions" and his statement, "[i]f you want your liquor, get closer." Vergara was "two or three feet away" from Bonds when he pulled the metal object from his pocket, which caused Vergara to fear for his safety and discontinue his attempts to deter Bonds.

¶ 7      Vergara called the police while he and his employee kept a safe distance from Bonds, who was leaving the store. After the police arrived, Vergara provided them with a description of Bonds. The police searched the area but were unable to locate him.

¶ 8      When asked whether he "typically detain[s]" individuals who are stealing, Vergara testified that "[w]e have to have selection and concealment and all of those steps before and it has to meet a criteria of a hundred dollars or more." Vergara explained that if an individual is identified as a "repeat offender," then "we can try to apprehend that person," and if the offender "make[s] it to a threshold of $5,000 or more, we just have to call law enforcement."

¶ 9      Vergara did not plan to detain Bonds on June 27, 2022, explaining, "at that point he wouldn't have to be deterred, leave the liquor behind and then for him to exit without anything." Vergara "stopped trying to deter" Bonds after he retrieved the metal object from his pocket.

¶ 10     Vergara testified to security camera videos of the incident, identifying himself, his employee, and Bonds. The footage was entered into evidence and published to the court. The surveillance videos, which are not marked, are in the record on appeal and have been viewed by this court. The first video depicts Bonds entering the liquor aisle and placing liquor bottles in a red bag. Bonds walks down the aisle and is met by a Target employee. The employee stands near Bonds and follows him down the aisle while Bonds continues placing liquor bottles inside of his

bag. Bonds then leaves the aisle. The second video shows Vergara walk towards Bonds and stand in front of him. Bonds then walks past Vergara. Vergara and the other employee follow Bonds briefly and observe him exit the store. The videos do not depict Bonds brandishing a metal object. Vergara acknowledged that part of the incident occurred behind an endcap, away from view of the cameras.

¶ 11    Vergara testified that on July 23, 2022, Bonds returned to the store. Given the safety concern, Vergara and all other loss prevention personnel walked over and stood at a distance from Bonds. Vergara advised Bonds that he was trespassing, asked him to leave the liquor, and requested that he exit the store. Bonds did not comply and grabbed additional liquor bottles. Bonds then walked to a different store aisle, took an item, and left the store with the items, valued at $215. Vergara flagged down a police vehicle, and police arrested Bonds with the stolen items.[1]

¶ 12    On cross-examination, Vergara agreed Bonds was alleged to have shoplifted on each occasion that he visited the store prior to June 27, 2022. Vergara did not apprehend Bonds during those incidents and did not intend to apprehend Bonds on June 27, 2022, as only he and one other loss prevention officer were on duty at the time. Vergara did intend to apprehend Bonds on July 23, 2022, as he "had more staff" on that date.

¶ 13    Regarding the object that Bonds retrieved from his pocket on June 27, 2022, Vergara testified that he did not clearly see what it was but assumed it was a knife because of Bonds's "intentions." Although Bonds did not state he had a knife, he pulled out a silver object from his pocket and said, "come closer if you want your liquor" so Vergara thought it was a knife. It was

---

[1] It was adduced that Bonds removed five liquor bottles and one container of laundry detergent from the store.

Target policy that if there was any indication of a weapon, Target personnel were to disengage, so Vergara told his employee they should both back away from Bonds.

¶ 14    The State called Chicago police sergeant Isagany Peralta to testify regarding the investigation she conducted on July 23, 2022, involving Bonds. Peralta spoke to "the victims from the original case," "gathered the facts," and interrogated Bonds. At the conclusion of her investigation, Peralta "notified the State's Attorney for a felony upgrade for robbery charges."

¶ 15    The State rested. The trial court denied Bonds's motion for a directed finding of not guilty of aggravated robbery.

¶ 16    Bonds testified that he did not remember what he was doing on June 27, 2022. He acknowledged that on July 23, 2022, he was at Target "[t]aking liquor," and stated that he did so to support his "drug habit."

¶ 17    On cross-examination, Bonds explained that he remembered the July 23, 2022, incident because he was arrested that day.

¶ 18    In closing, defense counsel argued that Vergara was not a credible witness because he made assumptions, did not witness the entire incident, and had "reason to mishear or misrepresent what he saw." Specifically, counsel pointed out that Vergara did not know what the metal object was and simply assumed it was a knife. Counsel contended that Vergara was frustrated and fed up because he had not been able "to catch" Bonds on prior occasions, and, as a result, "something may have looked like more than it was." Counsel suggested that the reason a metal and silver object suddenly became a knife was because the police would take that more seriously than shoplifting. Counsel noted that the surveillance footage did not show Bonds make any threatening gesture.

¶ 19    Counsel asked for a finding of not guilty for aggravated robbery and robbery. Counsel acknowledged that Bonds was guilty of retail theft, but argued that was the only crime he committed because "[t]here was no use or threat of the use of force that could be captured by either surveillance or credibly by a witness."

¶ 20    In announcing its ruling, the court stated that it considered the witness testimony and arguments from counsel, and found every State witness credible.

¶ 21    The court found Bonds not guilty of aggravated robbery. It stated that Bonds methodically went shelf to shelf retrieving liquor and brazenly continued to do so even when an employee was present. It found the "shiny object" Vergara observed in defendant's hand was "probably *** some type of weapon" given defendant's statement. But it was not clear that the object was a firearm or other dangerous weapon or bludgeon as required to prove aggravated robbery, which required "actions based on then he's threatening the eminent [*sic*] use of force while indicating verbally or by his actions that he was presently armed with a firearm or other dangerous weapon, to wit, an unidentified bludgeon."

¶ 22    The court found Bonds guilty of robbery where he "clearly" threatened "something because he says those words," " '[i]f you want your liquor, get closer,' " which was a "threat" and "could be perceived" by Vergara to be a threat. The court also found Bonds guilty of two counts of retail theft.

¶ 23    The court denied Bonds's motion for a new trial. After a hearing, the court sentenced him to a six-year prison term for robbery and three-year prison terms for the two retail theft convictions, with all terms to run concurrently.

¶ 24    On appeal, Bonds challenges the sufficiency of the evidence to sustain his robbery conviction.

¶ 25    The State must prove beyond a reasonable doubt every fact necessary for the crime charged to sustain a criminal conviction. *In re Winship*, 397 U.S. 358, 364 (1970); U.S. Const. amends. V, XIV. On a challenge to the sufficiency of the evidence, we must determine whether the evidence, viewed in a light most favorable to the State, would lead any rational trier of fact to conclude that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Gray*, 2024 IL 127815, ¶ 20; see also *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To accomplish this, we must carefully examine the record. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). All reasonable inferences are drawn in favor of the State. *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. Determinations regarding the weight of the evidence and the credibility of witnesses are the province of the trial court, and we may not substitute those determinations with our own. *People v. Davis*, 2023 IL App (1st) 220231, ¶ 47. We may only reverse a criminal conviction where the evidence is so unreasonable, improbable, or unsatisfactory that it creates reasonable doubt of a defendant's guilt. *People v. Profit*, 2021 IL App (1st) 170744, ¶ 22.

¶ 26    To sustain defendant's conviction for robbery the State was required to prove beyond a reasonable doubt that he knowingly took property from the person or presence of another by using force or "by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2020).

¶ 27    In this court, Bonds does not dispute that he took property from Target. The parties also do not dispute that Bonds did not use force in doing so, and that the State must establish that Bonds made a threat of imminent force. Bonds argues the State failed to prove that his "singular

communication with Vergara was a threat of imminent use of force," and that a reasonable person would not find Bonds's statement a threat of the imminent use of force.

¶ 28    The State responds that Bonds's statement did not exist in a vacuum. Rather, Bonds's verbal and physical conduct, specifically his saying "get closer" while making a menacing gesture and brandishing a metal object that appeared from close range to be a knife, induced in Vergara a reasonable fear of imminent harm, which in turn induced him to part with the liquor bottles, the store's property, against his will.

¶ 29    The gravamen of the offense of robbery is the use of force "or fear of violence directed at the victim in order to deprive him of his property." *People v. Dennis*, 181 Ill. 2d 87, 104 (1998). A taking through the fear of violence occurs when a victim's fear, through reason and common experience, would induce him to part with his property for the sake of his safety and puts him "under the temporary suspension of the power of exercising his will through the influence of the terror impressed." *People v. Carpenter*, 71 Ill. App. 2d 137, 143 (1966), citing *Steward v. People*, 224 Ill. 434, 443 (1906); *accord*, *People v. Cooksey*, 309 Ill. App. 3d 839, 849 (1999). However, a subjective feeling of fear alone will not support a robbery conviction; rather the fear must be "reasonable." *Dennis*, 181 Ill. 2d 87 at 102; *People v. Hovenec*, 232 Ill. App. 3d 57, 58-60 (1992) (finding that defendant used force where he placed a bottle of wine in his pocket at a liquor store, a store clerk attempted to grab the bottle from defendant, and defendant brandished a knife).

¶ 30    Therefore, we examine whether any rational trier of fact could conclude beyond a reasonable doubt that it was reasonable for Vergara to fear imminent violence based on Bonds's conduct and statement, causing him to part with the liquor for the sake of his person and placing

him under the temporary suspension of the power of exercising his will. *Gray*, 2024 IL 127815, ¶ 20; *Dennis*, 181 Ill. 2d at 102; *Carpenter*, 71 Ill. App. 2d at 143; *Cooksey*, 309 Ill. App. 3d at 849.

¶ 31    After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude beyond a reasonable doubt that it was reasonable for Vergara to fear imminent violence. Vergara testified that he twice told defendant to "leave the liquor and get out" and further advised him that he was trespassing. Bonds then retrieved a metal object from his pocket and said "[i]f you want your liquor, get closer." Vergara then disengaged from Bonds because he feared for his safety and ordered his employee to do the same. A reasonable person trying to stop the theft of their property, when threatened with a metal object while being told that if you want your property back, come closer, would, as Vergara did, fear imminent violence if he attempted to stop the offender from leaving the premises with the unpaid property.

¶ 32    In addition, the record makes clear that it was Vergara's fear of violence that caused him to part with his property for the sake of his person and placed him under the temporary suspension of the power of exercising his free will. *Carpenter*, 71 Ill. App. 2d at 143. Specifically, through the exercise of free will, Vergara wanted to deter Bonds from stealing, and to get him to relinquish the liquor bottles before leaving the store. The record reflects that Vergara was not able to do that on June 27, 2022, because Bonds's words and actions compelled Vergara to disengage and order his fellow employee to do the same.

¶ 33    The presence of a weapon is not an element of the offense of robbery. See 720 ILCS 5/18-1(a) (West 2020). At issue is whether Bonds, through his actions and words, reasonably caused Vergara to think he was in danger of imminent harm if he did not retreat and let Bonds leave with the goods. *Dennis*, 181 Ill. 2d at 104.

¶ 34    Accordingly, we find the evidence sufficient to establish Bonds threatened the imminent use of force. Therefore, we affirm his conviction for robbery.

¶ 35    Affirmed.